## Citizens' Nat. Bank *v.* Dowd.

*(Circuit Court, E. D. North Carolina.* June 21, 1888.)

1. Banks and Banking—National Banks—Insolvency—Priority of Claims.
    A creditor of an insolvent national bank, whose demand grows out of a fraudulent transaction perpetrated by the officers of the bank in contemplation of the immediate wrecking of their corporation, does not thereby become entitled to a preference over the general creditors of the bank.

2. Same.
    On the 22d and 23d of March plaintiff, a bank in Raleigh, N. C., received in the ordinary course of business checks drawn on the State National Bank of that city, which, after deduction had been made of its checks received by the latter bank, amounted to $17,000. It paid the same by its checks on a bank

in New York. The president of the State National Bank knew when he signed such checks that they would not be honored, and was making preparations to abscond with the assets of his bank. *Held,* that plaintiff is not entitled to any preference over other unsecured creditors.

(*Syllabus by the Court.*)

In Equity.
*Battle & Mordecai,* for plaintiff.
*F. H. Busbee,* for defendant.

SEYMOUR, J. The defendant is receiver of the State National Bank of Raleigh, which was closed on Monday, the 26th of March ult. The plaintiff, the Citizens' National Bank, asks for a decree giving its demand a preference over the general creditors of the bank, of which defendant is receiver. The facts upon which it bases its claim are as follows: On Thursday, the 22d of March, 1888, the plaintiff received in the ordinary course of business, checks drawn on the State National Bank for a large sum, and upon an exchange of checks between the two banks there was found to be due to the plaintiff the sum of $10,008.66, for which, on the following day, defendant's bank gave to plaintiff a check on the National Park Bank of New York, signed by its president. On Saturday of the same week, upon a similar transaction, defendant's bank gave plaintiff a like check for $7,603.75 for the balance of the previous day. For some days prior to March 24th, and as early as Thursday, the 22d of March, aforesaid, the late president and cashier of the State National Bank were preparing to abscond, and on Saturday, the 24th, did abscond, and betake themselves to Canada. Their flight was discovered on the following Monday, whereupon the bank closed. It appears as a fact from what is admitted by the defendant that the Park National Bank had not funds to pay the two drafts in question, nor, in the opinion of the court, had the officers of the State National Bank any reason to expect, or actual expectation, that the checks given by them to plaintiff would be paid. Such checks were, as matter of fact, duly presented and protested. It is admitted that defendant's bank was actually insolvent for six months prior to the flight of its officers.

1. Plaintiff's demand grew out of the receipt by it of checks on the debtor bank. This was but an ordinary dealing in the transaction of business between banks residing in the same place. If the plaintiff was defrauded, the fraud consisted in the fact that the insolvent bank continued to do business after its hopeless insolvency was known to its officers, and was one by which all the bank's depositors suffered, as well as did the plaintiff. It could not, therefore, be a ground for granting plaintiff a preference over them. It is contended, however, that the fact that this transaction occurred after the president and cashier of the debtor bank had determined to abscond, makes a difference. Before that time it might be that there was a reasonable expectation that the bank would be able to recover itself, and continue business. The fraud, it is said, consists, not in doing business after the bank was insolvent, but in doing it after it was hopelessly insolvent, and in the expectation of bankruptcy.

If this be so, it would render necessary an inquiry into the question of when the hopelessness of its recovery became certain to the bank officers, and what degree of certainty of insolvency is requisite to make further conduct of business by a bank fraudulent. The inquiry would be difficult. A definite date would have to be fixed, and all debts contracted after that date would have to be given a preference over all before. It would, in practice, be impossible to draw such a line. Wherever drawn, injustice would be done. It is highly improbable that there was any precise date at which the officers of the bank became convinced of its insolvency. If there was any, it was probably long before they determined upon flight. Such a line no court, as far as we can discover, has ever attempted to draw. The plaintiff has cited *Cragie* v. *Hadley*, 99 N. Y. 131, 1 N. E. Rep. 537. A distinction is taken in that case between the actual and the hopeless insolvency of a bank. The insolvent bank had received a check for collection, and had forwarded it to another bank, which had collected it. The contest was between the receiver of the insolvent bank and the owner of the check, for the money in the hands of the bank which had made the collection. The plaintiff was suing for his own money, which had never been mixed with the funds of the insolvent bank. The same question might arise here if, after the flight of its officers, but before the discovery of that flight, a customer of the State National Bank had deposited a roll of bills therein, which had remained separate and capable of being identified when the bank came into the hands of the receiver; but it does not occur in the case before us.

2. It is claimed that giving the worthless checks on the Park Bank constitutes such a fraud as to entitle the plaintiffs to a preference. Although at the time those checks were given the plaintiff had taken the State National Bank's checks, it had not then finally charged itself with them, and it would, had not the debtor bank given these checks, have charged the checks on it to its own customers who had deposited them, and thus put the loss on them. This may be so. But the court knows of no principle upon which a general fraud gives the person defrauded a lien on a particular fund. The fraudulent giving of the checks on the Park Bank has no more relation to the funds of the bank now in the hands of the receiver than any other part of the fraudulent conduct of the absconding officers. The only question is, has plaintiff any lien on the funds of the defendant's bank? It is plain that he has not, but is only a general creditor, who, both by the statute (Rev. St. § 5242) which forbids preferences, and the general law, must stand upon an equality with all the creditors of the State National Bank. The bill is dismissed, but without prejudice.