ANGELO LEGNITI, Respondent, v. THE MECHANICS AND
METALS NATIONAL BANK OF NEW YORK, Appellant,
Impleaded with Others.

Banks and banking — sale of credit by drafts drawn upon,
or by cable or wireless messages sent to, correspondents in
foreign countries — such a transaction is one of purchase and
sale and no trust relationship is established.

1. Where a bank having a credit with a correspondent in a foreign
country sells its draft or check, drawn upon such correspondent,
to a purchaser who desires to make a foreign payment, the draft is
not the credit but represents the credit, or in other words, it is a
notification to the correspondent to pay the money as directed.   The
draft is a direction to pay.   It is not, itself, money or credit but is
used as such.   The money paid the bank by the purchaser of the draft
becomes the bank's money.   The transaction is that of purchase and
sale and no trust relationship is established.

2. Where a purchaser does not receive a check or draft, which is to
be transmitted by mail, but pays for a credit which will be given him
in the foreign country by an immediate cable or wireless message
from the bank or seller to his correspondent at the foreign point, the
thing sold is the same as in the case of the draft or check; it is the
credit of the bank or seller, and such transactions are matters of
purchase and sale and create no trust relationships.

3. Plaintiff desired to transfer at once money to a party in Naples,
Italy, and he made an arrangement with a firm in New York to do so,
saying, " I give you the order to cable this money for me to Italy, on
condition that you send the cable immediately."   He delivered to
them the amount in a certified check, which the firm deposited the
next day to its credit in a bank.   The cable credit was never trans-
mitted by the firm and shortly afterwards it went into bankruptcy.
At the time the deposit was made with the bank the firm owed it a
large sum for moneys advanced secured by discounts and notes, and
it also had a cash balance at the bank, which was increased by the
proceeds of the plaintiff's check.   Plaintiff claimed that the money,
which went into the bank instead of being sent to Naples, still belonged
to him and that the bank held it in trust for him.   The bank claimed
that it had the right to offset it under the Bankruptcy Law as against
the firm's indebtedness to the bank.   The bill presented to the plaintiff
by the firm, whereby he had parted with his money, stated that he
bought of it a certain number of lire to be transferred by cable to

Italy. *Held,* that the transaction on the part of the plaintiff was a purchase of credit, not the transfer of specific money, and that no trust attached to the proceeds of the check in the hands of the bank.

*Legniti* v. *Mechanics & Metals Nat. Bank,* 186 App. Div. 105, reversed.

(Argued January 26, 1921; decided March 1, 1921.)

APPEAL from a judgment, entered July 24, 1919, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term and directing judgment in favor of plaintiff and against defendant, appellant, upon new findings.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank M. Patterson* for appellant. There was no relation of trust or quasi-trust or agency between plaintiff and Bolognesi & Co.; the purchase price of the cable transfer became the property of Bolognesi & Co., against which plaintiff received their obligation that the transfer would be made at Naples. The transaction created the relation of debtor and creditor. (*Strohmeyer & Arpe Co.* v. *Guaranty Trust Co.,* 172 App. Div. 16; *People ex rel. Zotti* v. *Flynn,* 135 App. Div. 276; *Taussig* v. *Carnegie Trust Co.,* 156 App. Div. 519; 213 N. Y. 627; *Equitable Trust Co.* v. *Keene,* 111 Misc. Rep. 546; *Oshinsky* v. *Taylor,* 172 N. Y. Supp. 231.)

*Ralph S. Rounds, Eugene Congleton* and *Adolph A. Berle, Jr.,* for William Schall & Co., *amicus curiæ.* No express or constructive trust is raised by payment of money for a cable transfer. (*Atlantic Communication Co.* v. *Zimmerman & Forshay,* 182 App. Div. 862; *Strohmeyer & Arpe Co.* v. *Guaranty Trust Co.,* 172 App. Div. 16; *Equitable Trust Co.* v. *Keene,* 111 Misc. Rep. 544; *Musco* v. *United Surety Co.,* 132 App. Div. 300; *Gelfand* v. *State Bank,* 172 N. Y. Supp. 99; *People ex rel. Zotti* v.

*Flynn,* 135 App. Div. 276; *Oshinsky* v. *Taylor,* 172 N. Y. Supp. 231.) The ordinary transaction by which a cable transfer is secured creates a mere executory contract subject to the ordinary rules applying to such contracts. (*Atlantic Communication Co.* v. *Zimmerman & Forshay,* 182 App. Div. 862; *Bank of China, etc.,* v. *Am. Trading Co.,* 1894, App. Cas. 266; *Bank of British N. A.* v. *Cooper,* 137 U. S. 473; *Katcher* v. *Am. Express Co.,* 109 Atl. Rep. 741; *Husted* v. *Craig,* 36 N. Y. 221; *Higgins* v. *Delaware & Lackawanna,* 60 N. Y. 553; *Taylor* v. *Saxe,* 134 N. Y. 67; *Graham* v. *Graham,* 134 App. Div. 777; *Browne* v. *Patterson,* 36 App. Div. 107; *Norton* v. *Dreyfuss,* 106 N. Y. 90.) If it is preferred to consider cable transfer transactions as sales, they are executory sales even though the full purchase price is paid in advance, since an important act is to be performed as a condition precedent to vesting of title. In any case the purchase price vests absolutely in the banker subject to rights of the customer upon default in delivery. (*Equitable Trust Company* v. *Keene,* 111 Misc. Rep. 544; *Bank of China, etc.,* v. *American Trading Co.,* 1894, App. Cas. 266; *Pope* v. *Allis,* 115 U. S. 363; *Meader* v. *Cornell,* 58 N. J. L. 375; *Freer* v. *Denton,* 61 N. Y. 492; *Flandrow* v. *Hammond,* 148 N. Y. 129; *Chapman* v. *City of Brooklyn,* 40 N. Y. 372.)

*Winthrop W. Aldrich* for Equitable Trust Company of New York, *amicus curiæ.* There was no relation of trust or quasi-trust or agency between the plaintiff and Bolognesi & Co. The purchase price of the cable transfer became the property of Bolognesi & Co. against which the plaintiff received the obligation of Bolognesi & Co. that credit should be transferred to the plaintiff at Naples. The transaction created the relation of debtor and creditor between the plaintiff and Bolognesi & Co. (*Strohmeyer & Arpe Co.* v. *Guaranty Trust Co.,* 172 App.

27

Div. 16; *Equitable Trust Co.* v. *Keene,* 111 Misc. Rep. 544; *Oshinsky* v. *Taylor,* 172 N. Y. Supp. 231; *Atlantic Com. Co.* v. *Zimmerman,* 182 App. Div. 862; *Katcher* v. *Am. Express Co.,* 109 Atl. Rep. 741; *People ex rel. Zotti* v. *Flynn,* 135 App. Div. 276.)

*J. Charles Weschler* for respondent. The relations between the plaintiff and A. Bolognesi & Co. were not those of debtor and creditor — plaintiff's check was received by A. Bolognesi & Co. in a fiduciary capacity. (*Oshinsky* v. *Taylor,* 172 N. Y. Supp. 231; *People ex rel. Zotti* v. *Flynn,* 135 App. Div. 276; *People* v. *City Bank,* 96 N. Y. 32; *Cutler* v. *Am. Ex. Bank,* 113 N. Y. 593; *Johnson* v. *Whitman,* 10 Abb. Pr. [N. S.] 111; *Britton* v. *Ferrin,* 171 N. Y. 236; *Goldberg* v. *Peoples Surety Co.,* 162 App. Div. 385.) Upon the collection of the said check by the defendant bank, a constructive trust arose in favor of the plaintiff with respect to the proceeds of the said check in the hands of the said defendant which acquired no right or title in or to such proceeds. (*Cutler* v. *Am. Ex. Bank,* 113 N. Y. 593; *Bank* of *America* v. *Pollock,* 4 Edw. Ch. 215; *Tuttle* v. *Tuttle,* 7 Wkly. Dig. 351; *Bryant* v. *Allen,* 54 App. Div. 500; *Medical College* v. *N. Y. University,* 178 N. Y. 153; *Yuengling* v. *Betz,* 30 Misc. Rep. 260; *Slayback* v. *Raymond,* 93 App. Div. 326; *N. Y. & B. Ferry Co.* v. *Moore,* 102 N. Y. 667; *Marvin* v. *Brooks,* 94 N. Y. 71; *Soltau* v. *Gerdan,* 119 N. Y. 380; *Haight* v. *Haight & Freese Co.,* 112 App. Div. 475.) The plaintiff has the right to follow the fund in the hands of the defendant bank, and he has traced and identified the funds in the hands of the bank. (*Jaffe* v. *Weld,* 155 App. Div. 110; *Cohnfeld* v. *Tannenbaum,* 58 App. Div. 310; *United National Bank* v. *Weatherby,* 70 App. Div. 279; *Welch* v. *Polley,* 177 N. Y. 117; *Am. S. R. Co.* v. *Fancher,* 145 N. Y. 552; *Blair* v. *Hill,* 50 App. Div. 33; 165 N. Y. 672; *Walsh* v. *Nat. Broadway Bank,* 13 Misc. Rep. 3; *I. & T. Nat. Bank* v. *Peter,*

123 N. Y. 272; *Dowd* v. *Kidder*, 84 N. Y. 121.) The title of the bank to the money in question is inferior to the title of the plaintiff, and no right of setoff exists as against the plaintiff. (*Jordan* v. *Nat. Shoe & Leather Bank*, 74 N. Y. 467.)

CRANE, J. It has long been an established custom among banks and financial institutions to sell credit usually represented by draft or check. Thus a bank having a credit with a correspondent in a foreign country will sell its draft or check, drawn upon such correspondent, to a purchaser who desires to make a foreign payment. The draft is not the credit but represents the credit, or in other words, it is a notification to the correspondent or foreign representative to pay the money as directed. The draft is a direction to pay. It is not, itself, money or credit. It is simply used as such. The money paid the bank by the purchaser of the draft becomes the bank's money. The transaction is that of purchase and sale. No trust relationship is established. (*Taussig* v. *Carnegie Trust Company*, 213 N. Y. 627.)

This practice of selling credit by means of drafts or checks grew up among merchants and bankers with the expansion of trade and the necessities of commerce. With the increase of foreign trade and the development of international relationships, communication by cable and wireless met the insistent demands for haste and dispatch. Thus the custom has developed of selling credit to be established by cable or wireless. A purchaser does not receive a draft or check which is to be transmitted by mail, but pays for a credit; which will be given him in the foreign country by an immediate cable or wireless from the seller to his correspondent at the foreign point. The thing sold is the same in the case of the cable or wireless transaction as in the case of the draft or check. It is the credit of the bank or seller. The means of establishing or transmitting the credit is simply an

incident of the transaction. In the one case, it is a formal paper drawn up and signed by the seller directing his foreign correspondent to make payment of the amount and to the person therein stated. In the other case, it is a similar direction transmitted by cable or wireless. Cable transfers, therefore, mean a method of transmitting money by cable wherein the seller engages that he has the balance at the point on which the payment is ordered and that on receipt of the cable directing the transfer his correspondent at such point will make payment to the beneficiary described in the cable. All these transactions are matters of purchase and sale and create no trust relationships. (*Strohmeyer & Arpe Co.* v. *Guaranty Trust Co.*, 172 App. Div. 16; *Katcher* v. *American Express Company*, 109 Atl. Rep. 741; A. C. Whitaker on Foreign Exchange, section 26, p. 89.)

In some of the cases this purchase of a cable transfer is referred to as a contract. (*Bank of British North America* v. *Cooper*, 137 U. S. 473; *Bank of China, Japan, and the Straits, Limited*, v. *American Trading Company*, Law Reports A. C. 1894, page 266; *Atlantic Communication Co.* v. *Zimmermann*, 182 App. Div. 862.) The terms of the contract are in such a case that the banker agrees to send a cablegram establishing a credit with his foreign correspondent. The contract, it is said, is executory until the credit has been established and that upon failure to send the message the customer may rescind the contract and sue to get back his money or else sue for breach of contract. Whether the transaction be considered a purchase or an executory contract, we need not now determine. So far as this case is concerned, it is a mere matter of nomenclature. In either case, the money paid by the customer to the banker becomes the latter's property and does not establish a trust relationship; the banker does not hold the money as agent or trustee until the foreign credit is established.

There is a marked distinction between these transactions

which I have just described and a direction to a bank or other person to transmit a certain specific sum of money to a person abroad. In such cases the bank or transmitter is the agent of the person paying the money, and until the money is sent holds it as agent or trustee for the owner. Such were the cases of *Musco* v. *United Surety Company* (132 App. Div. 300) and *People ex rel. Zotti* v. *Flynn* (135 App. Div. 276). In these latter transactions the intention of the payer is that the money he gives to his agent shall be sent abroad. It is the amount which he gives that is to be transmitted. How it is sent may be immaterial to him. If there be time, currency might be purchased and sent. If not, it may be transmitted in any form recognized in financial circles. It is not at all necessary that the sender or agent have credit in the place to which the money is to be sent. On the other hand, in the contract for credit it is not a specific sum which is to be sent but rather a specific credit which is to be purchased. The amount paid varies with the market. The actual thing that is done by the sender in both of these cases may or may not be the same, but the practice of the merchants and banks has recognized a difference; so have the courts. In the case now before us was the transaction between Angelo Legniti and A. Bolognesi & Co. a purchase of credit or the direction to transmit, as the plaintiff's agent, a specific sum of money? It is frankly conceded by the attorney for the respondent that if it be the former, the plaintiff has no right of recovery. The facts, therefore, must be briefly stated to determine this question.

In February of 1914 Alessandro Bolognesi and Aldo Bolognesi were copartners doing business in the city of New York under the firm name of A. Bolognesi & Co. The plaintiff was a banker at 64 Mulberry street in the city of New York who was in arrears in Naples on account of the failure of one Caesari Conti, and needed to transfer some money to that place at once. He applied to

several banking houses in New York to obtain the best rate for the transfer of 18,000 lire to Naples, Italy. On the afternoon of February 10th, 1914, he made his arrangements for this purpose with A. Bolognesi & Co. He said to their representatives: "I give you the order to cable this money for me to Italy, on condition that you send the cable immediately, tonight because as you know, on account of the failure of Caesari Conti, I am overdrawn. I need this money to reach Naples tomorrow." A few minutes before six o'clock on that day a boy from Bolognesi & Co. brought to the plaintiff's office a bill which reads as follows:

"NEW YORK, *February* 10, 1914.

"Mr. ANGELO LEGNITI,

"Bought of A. BOLOGNESI & Co.,

"52 Wall Street.

"Cable Transfer to Italy to pay by cable to Banca Commerciale Italiana, Napoli, advice to be forwarded by Cable from New York.

| | |
|---|---|
| "Lire 18,000 at 5:19 7–8 | $3,462.37 |
| "Cabling | 1.24 |
| "Paid ck 3450 | |
| "(cash 13.61) | $3,463.61 |
| "Bolognesi & Co. | |
| "Maselli | |

"Payments required in cash or certified cheques, otherwise order if accepted, will be executed after collection of cheque.

"It is fully understood and agreed that no liability shall attach to us nor to our correspondent for any loss or damage in consequence of any delay or mistake in transmitting this message or for any other cause beyond our control."

Thereupon the plaintiff delivered to the messenger a certified check for $3,450 indorsed to A. Bolognesi & Co. and $13.61 in cash. This check was deposited the next

day by A. Bolognesi & Co. in its account in the Mechanics and Metals National Bank of New York, collected and credited to the account of the depositor. The cable credit was never transmitted, as on the 11th day of February A. Bolognesi & Co. made a general assignment for the benefit of creditors. Later, in March of 1914, a petition in bankruptcy was filed against them, resulting in the election on the 14th day of August, 1915, of the trustees, parties to this litigation. On the 10th day of February, 1914, the firm of A. Bolognesi & Co. was indebted to the defendant, the Mechanics and Metals National Bank of New York, in the sum of $51,329.90 for moneys advanced, secured by discounts, acceptances and notes. There was a balance on deposit with the defendant, the Mechanics and Metals National Bank of New York, to the credit of A. Bolognesi & Co. of $18,985.05 which was increased by the deposit of the check delivered by the plaintiff to A. Bolognesi & Co. and $6,241.65 in addition thereto. This amount was reduced by three checks aggregating $732.94. As against this balance due to its depositor, the defendant bank claims the right to offset under the Bankruptcy Law the indebtedness of A. Bolognesi & Co. as above stated.

This action has been brought by Angelo Legniti upon the theory that A. Bolognesi & Co. became his agents for the sending of 18,000 lire to Naples, Italy, and that as the money was not sent, he may recover it from the bank into whose possession it can be traced. The bank, he claims, holds it, charged with a trust to pay it to him; it is his money, he says, as he never lost title to it. We do not think there is evidence here of any trust. It was stated by Alessandro Bolognesi in his examination as follows: " Q. As I understand it, you sold for a given number of American dollars a certain number of lire to be delivered in Italy to somebody else? A. To be transferred from my account. Q. That was the transaction in this particular matter? A. That was the

regular transaction. Q. What is the difference between that and the sale of a draft for so many lire credit in Italy? A. Only that the draft is advised by mail and this is advised by cable."

It will be noted that the bill presented to the plaintiff late in the afternoon of February 10th, above quoted, upon which the plaintiff parted with his money, stated that he, Mr. Angelo Legniti, *bought* of A. Bolognesi & Co. cable transfer to Italy — to pay by cable to Banca Commerciale Italiana. This was not the case of a specific sum of American money being sent to Naples after being exchanged for lire. It was a case of 18,000 lire being needed in Naples and the purchase of A. Bolognesi & Company's credit with the Banca Commerciale Italiana for this amount which credit was to be used by and for the benefit of Legniti. The money was not to be sent to the Banca Commerciale Italiana for Legniti. It was A. Bolognesi & Co. who on February 10, 1914, had either money or credit at the Banca Commerciale Italiana of Naples, the use of which for compensation was sold and transferred to the plaintiff.

We are naturally impressed, as any one must be, with the fact that the plaintiff gave his money to establish a relative value or worth in Naples and that the receiver kept the money and did not deliver the value, and that this money the bank now holds. Why should not the plaintiff get it back? Upon the failure of A. Bolognesi & Co. many claims sprang into existence beside this of the plaintiff and it is the duty of the courts as far as possible to adjust these relationships according to well-established principles, usages and customs.

The Mechanics and Metals National Bank of New York also had given money or money value to A. Bolognesi & Co. and has a claim for $51,329.90. There were also many other claimants to the assets. To establish a rule that in a case like this the plaintiff becomes a preferred creditor; that the transaction is in the nature of a trust,

and that checks deposited with banks upon the purchase of credit are trust funds held for certain and specified purposes, is apt to lead to much confusion, especially when those who have developed this method of doing business into a well-established custom have never treated them as such.

The judgment of the Appellate Division must, therefore, be reversed and that of the trial court affirmed, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Judgment accordingly.