SPIRA, D. B. A. BANK OF HENRY SPIRA, v. EISEN.

*Breach of contract—Pleading and proof insufficient—Review of
case upon record—Banks and banking—Transmission of
foreign exchange—Delivery prevented by war—Depreciation
of foreign exchange—Amount bank to return to sender.*

1. Where all the evidence in the case, and the statement of claim
   itself, fails to show any breach of any of the terms of a
   contract as set forth in plaintiff's pleadings, but the case
   goes to trial without any objection on the part of the de-
   fendant by way of demurrer to the evidence, the case may
   be considered by the reviewing court upon the record.

2. A bank doing a foreign exchange business which receives the
   sum of $71 for transmission of its equivalent of 475 kronen
   through European mails to Austria, the delivery of which
   is prevented because of an existing state of war, owes
   to the sender the duty of returning to him 475 kronen or
   their equivalent in American money at the current rate of
   exchange as of the time when with due diligence the bank
   should have ascertained and reported its inability to deliver.

(Decided March 13, 1922.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Squire, Sanders & Dempsey,* for plaintiff
in error.
*Messrs. Siegel & Siegel,* for defendant in error.

SULLIVAN, J.   This cause comes into this court on
error from the municipal court of the city of Cleve-
land.

The defendant in error, Wolf Eisen, filed a state-
ment of claim in that court praying for a judgment
against the plaintiff in error for $71, with interest
from the 14th day of February, 1916.

The statement of claim alleges that the defendant
below was engaged in the foreign exchange business,

in the transmission through foreign mails of money given defendant for that purpose; alleges as a cause of action against defendant that he on the 14th day of February, 1916, delivered to defendant the sum of $71 for the purpose of *transmitting through European mails* to one Mirsl Eisen foreign money amounting to 475 kronen, in consideration of certain compensation; that said Mirsl Eisen never received such money so transmitted; and that a copy of the receipt received by plaintiff below, upon the payment of said money, is hereto attached, marked Exhibit "A," and made a part of the statement of claim.

Exhibit "A," as attached to the bill of exceptions, on what appears to be a regular form in common use at the bank of defendant below, is a receipt, as follows:

"HENRY SPIRA, 599 BROADWAY.
          *"Cleveland, Ohio, U. S. A., Feb. 14, 1916.*
"No. 18003.
     "Received from ........ Wolf Eisen 71 ........
........Dollars for transmission through European mails to Mirsl Eisen.
"Amount Received                    Amount Sent
     $71              HENRY SPIRA              475
  Dollars                                Kronen.
                          "Bank of Henry Spira
                          "Paid, Feb. 14, 1916.
                              "Cleveland, Ohio."

The defendant below filed no answer, as under the rules of the municipal court the same is not required where the recovery sought is less than $100.

After hearing had, the municipal court rendered judgment in favor of plaintiff for $64.12, and also his costs of suit. On March 10, 1921, a motion for new trial was filed by the defendant below, and the motion being overruled the defendant then and there excepted, whereupon the case came into this court for alleged errors in the proceedings below.

It plainly appears from the allegations of the statement of claim that the plaintiff is not entitled to recover in any amount under that pleading, for the reason that the cause of action is based upon a contract to do certain specific things, as is evidenced by the receipt known as Plaintiff's Exhibit "A."

The conclusions of the court arise from the aforesaid pleading itself. The gist of the statement of claim is that the defendant below received the aforesaid $71 for the purpose of transmission through the European mails in foreign money to the amount of 475 Austrian kronen, and further that the sum of $71 *so delivered* was evidenced by the receipt known as Plaintiff's Exhibit "A," as aforesaid stated, translated into 475 Austrian kronen.

It is apparent that there is no allegation whatsoever of any breach of the aforesaid conditions incorporated in the aforesaid contract with respect to the terms of the same as specifically set forth in the statement of claim. It cannot be claimed that the allegation in the statement of claim that Mirsl Eisen never received the money placed with the defendant below is a breach of the aforesaid terms of said contract, because there is no claim under that pleading that defendant below in any manner promised or guaranteed *delivery* of the money or its equivalent in foreign exchange to said Mirsl Eisen. Therefore the conclusion is irresistible that under the state-

ment of claim no recovery whatsoever could be had for the plaintiff below.

The case, however, went forward to trial, and it appears conclusively from the record in the case, as to the specific allegations regarding the terms of the contract set forth in the statement of claim, that the entire evidence in and of itself coincided with the allegations of the statement of claim with respect to the contract and the breach thereof.

In other words, it appears from all the evidence in the case, as in the statement of claim itself, that there was an utter failure to show any breach of performance of any of the terms of the contract as set forth in the pleading of the plaintiff below.

The aforesaid legal deficiency in the pleading with respect to the aforesaid breach might not be regarded as of decisive materiality by a reviewing court if the evidence itself had evinced a failure on the part of the defendant below for the full performance of the terms of the contract, as set forth in the statement of claim. In such an event this court might be warranted, in the absence of an objection below to any evidence under the petition, in ignoring the aforesaid vital deficiency in the averments of the pleading of the plaintiff below.

However, the case went to trial without any objection on the part of the plaintiff in error by way of demurrer to the evidence, so that the case will be considered by this court upon the record.

Under the contract, as alleged in the petition, and verified by the evidence, there was no obligation on the part of the plaintiff in error to *deliver* the 475 kronen. Its duty under the contract was to receive the original money, translate it at the request of defendant in error into 475 kronen, and transmit the

same, in accordance with the contract, through the European mails.

The Lucas county court of appeals, in *Nat. Bank of Commerce* v. *Evanoff, ante,* 51, construing the legal effect of a receipt similar in import to Exhibit "A," in a similar case to the one at bar, held, in an opinion pronounced by Judge Richards, as follows:

"Counsel for Evanoff contended that the obligation of the bank was an absolute one to deliver $200, and that having failed to comply with the terms of the contract, he is entitled to a return of the amount with interest, and this was the view adopted by the court of common pleas. Notwithstanding this contention of counsel, the petition filed avers that the bank agreed to transmit the sum of $200, or its equivalent in Bulgarian money, to Tsana Stancheff, wife of the plaintiff; * * *. We think there can be no doubt that Evanoff did not wish $200 in American money transmitted to his wife, but that he wished its equivalent in Bulgarian money forwarded to her. The bank became his agent for that purpose, and its obligation would be only that of exercising ordinary care in transmitting to Evanoff's wife the value in Bulgarian money of $200, and in determining what constituted ordinary care it would of course be necessary to take into consideration the state of war then and for a long time thereafter existing and the extent of the interruption of communication between the United States and Europe."

The New Jersey supreme court, in *Katcher* v. *American Express Co.,* 100 Atl., Rep., 741 (92 N. J. L., 309), rendered an opinion of similar import to the one pronounced by Judge Richards in the Lucas county case, *supra,* as follows:

· "Defendant agreed, in consideration of money paid by plaintiff, to cable a credit of 1,000 rubles to Russia and remit, or forward, that sum to a designated person at a specified place 'subject to the rules and regulations of the various post offices used in making the remittance.'    *Held,* that there was no absolute agreement to deliver the money, and that, when it had been duly mailed in Russia and had come back to defendant's agent undelivered, plaintiff was entitled to no more than the 1,000 rubles or their American equivalent at the current rate of exchange as of a time when with due diligence defendant should have ascertained and reported non-delivery.''

In this case the receipt in question was of similar import, and the court held it to be exclusive evidence of the contract.    The above case, in our opinion, has direct application to the case at bar.

In the case of *Legniti* v. *Mechanics & Metals Natl. Bank of N. Y.,* 230 N. Y., 415, upon a similar question, the court held that the purchase of a foreign draft is a purchase of credit.

Paragraph two of the syllabus reads as follows:

"2.    Where a purchaser does not receive a check or draft, which is to be transmitted by mail, but pays for a credit which will be given him in the foreign country by an immediate cable or wireless message from the bank or seller to his correspondent at the foreign point, the thing sold is the same as in the case of the draft or check; it is the credit of the bank or seller, and such transactions are matters of purchase and sale and create no trust relationships.''

In *Strohmeyer & Arpe Co.* v. *Guaranty Trust Co. of N. Y.,* 172 N. Y. App. Div., 16, the court inter-

preted the meaning of the word "transmit," and held that it did not mean "to deliver."

The court below rendered judgment in the sum of $64.12 in behalf of the defendant in error, upon the basis of the rate of exchange upon 475 kronen in March, 1916, with interest from that date, the same being the date that the foreign bank had knowledge of its inability to deliver the funds transmitted. The contention of the plaintiff in error is that the basis of the rate of exchange should be of September 16, 1919, being the date on which the plaintiff in error received notice from the foreign banking concern of the inability to deliver to the payee the 475 kronen for which the plaintiff in error gave the receipt at the time the money of the United States was exchanged for the 475 kronen. The basis of exchange on said date of September 16, 1919, as the record shows, was $2.50 per hundred. Taking judicial notice of the war, it appears from the record that the plaintiff in error had exercised ordinary care under the common rules of banking, with respect to foreign exchange, and with regard to its duties as alleged in the statement of claim and evidenced by Exhibit "A," the receipt for the 475 kronen.

In the Lucas county case, *supra,* in the opinion delivered by Judge Richards, the following language will be noted:

"The bank became his agent for that purpose, and its obligation would be only that of exercising ordinary care in transmitting to Evanoff's wife the value in Bulgarian money of $200, and in determining what constituted ordinary care it would of course be necessary to take into consideration the state of war then and for a long time thereafter existing

and the extent of the interruption of communication between the United States and Europe."

Under this authority, it is the opinion of this court that the judgment below is excessive, and that the amount that would be due the defendant in error from the plaintiff in error would be the value of 475 kronen according to the basis and rate of exchange with United States monies existing as of September 16, 1919, which, as we figure it, would be $11.88 as of said date.

As to the conversion in March, 1916, of the $71 of United States money into 475 kronen, we read from the testimony of the plaintiff in error, on page 18 of the record, as follows:

"Q. Then the foreign bank held you responsible for 475 kronen after they received the notice? A. Yes, sir.

"Q. They also credited your account with 475 kronen after they found they were not able to send the money? A. Yes, sir.

"Q. That was in March, 1916? A. Yes, sir; and we had to supply ourselves with 475 kronen to take care of this order; realizing that other orders that came through at that time we had to buy them in the market.

"By the Court: How do you mean, you had to buy them in the market? A. This one order that two or three days, a million or two millions or three passed through. We might sell during the day, or millions kronen, and we have to go out in the market and purchase the kronen to cover our account. We always keep kronen ahead so our account would not be short.

"Q. You purchase the kronen here in America? A. Purchase the bill of exchange and send them over to the bank. As this man instructed us to send it to his people, we bought the order and instructed them to credit our account, and if it couldn't be credited to our account, on coming back here we have to replace it in the market at the current rate. If a payee dies and the money comes back we have made a margin, probably, of 30 per cent. profit, but if the market declines only one-eighth of a point, any bank would have to close its doors if we were to pay back the same amount in dollars as paid for the original credits."

From the foregoing it would appear from the record that at or about the time of giving the receipt for 475 kronen, the $71 had been changed from United States money into 475 kronen, and then and thereafter the identity of the $71 as United States money was lost, and it became money of Austria, to-wit, 475 kronen, and from that date forward the kronen became the basis of figuration for value.

It further appears from the record that the plaintiff in error, on September 16, 1919, offered to return the value of the 475 kronen according to its rate of exchange on that date, but that the defendant in error refused to accept the same, and has so continued to do.

By reason of the foregoing, we are of the opinion that the court below erred by rendering an excessive judgment, and this court, because of that error, reverses the judgment and hereby renders the judgment which this court is of the opinion the court below ought to have rendered under the evidence in the case, to-wit, a judgment for the defendant in

error in the sum of $11.88, with interest from September 16, 1919, and for his costs.

*Judgment accordingly.*

INGERSOLL, J., concurs.
VICKERY, P. J., not participating.