## J. G. PAUL v. FARMERS & MERCHANTS STATE BANK OF RUSSELL AND ANOTHER.[1]

December 9, 1932.

No. 28,959.

[1]Reported in 245 N. W. 832.

412

*Hall & Catlin,* for appellants.
*J. V. Williams,* for respondent.

OLSEN, J.

Defendants appeal from an order denying their motion for a new trial.

The action is brought to recover $163.58, being the amount of a draft purchased by plaintiff from the defendant bank on September 26, 1930, on which payment had been refused by the bank upon which the draft was drawn. On September 26, 1930, the plaintiff came to the defendant bank and presented to the assistant cashier certain checks from a number of concerns, payable to plaintiff, amounting in all to $172 and some cents. He informed the cashier that he wanted to send a remittance or draft to the Federal Land Bank at St. Paul to pay $163.58 interest coming due on a mortgage to that bank. The cashier first made out a cashier's check for $163.58. Plaintiff said the land bank preferred a good draft. The cashier then made out a draft for the amount on the First National Bank of Minneapolis. Plaintiff objected that it was not a draft on the St. Paul bank, but was informed that the defendant bank was doing business that way. He then accepted the draft, put it in an envelope himself, and mailed it to the Federal Land Bank. The cashier paid to plaintiff in cash nine dollars, the balance of the amount of the checks received from plaintiff, less a few cents charged as exchange on the draft. Plaintiff was not a depositor of and had no account in the defendant bank. The draft was not paid because on September 29, 1930, before the draft in due course reached the First National Bank of Minneapolis, the defendant

bank was closed and taken over by the commissioner of banks. The draft was then returned to plaintiff unpaid. Plaintiff filed claim for the amount of the draft with the commissioner of banks and asked that it be allowed as a preferred claim. The commissioner refused to allow the claim as a preferred claim but allowed it as a general claim.

The trial court held that by the transaction stated a trust fund in the amount of the draft came into the hands of the defendant bank; that plaintiff became a preferred creditor of the bank and is entitled to recover the full amount of the draft. That the amount paid for the purchase of the draft increased the funds of the bank and augmented the funds coming into the hands of the commissioner of banks is conceded.

The first question presented is whether the court erred in finding that plaintiff became a preferred creditor of this bank. There is no material dispute as to the facts. It is true that plaintiff informed the officers of the bank that he wanted the draft for the purpose of paying interest on a mortgage to the Federal Land Bank, and stated he wanted a good draft. The draft was good when issued. The facts shown are insufficient to create any trust fund or to make plaintiff a preferred creditor. The transaction between the plaintiff and the bank was completed and closed when the draft was sold and delivered to plaintiff. The bank did not undertake to forward the money to the land bank or to do anything further in connection with the payment. It is not claimed or shown that the bank did not have funds in the Minneapolis bank sufficient to pay the draft. Payment was not made because, before the draft reached the Minneapolis bank, the commissioner of banks had taken over the defendant bank. The plaintiff was simply a purchaser from defendant bank of a draft, which has not been paid. The rule is well settled that, in the absence of any fraud and where the bank does not undertake to act as agent for the purchaser for any purpose or agree to hold or apply the fund for any special purpose, the purchaser of a draft becomes only a general creditor of the bank in case the draft is not paid. Hjelle v. Veigel, 169 Minn. 173,

210 N. W. 891; Milne v. Capital T. & S. Bank, 170 Minn. 66, 211 N. W. 954; Standard Oil Co. v. Veigel, 174 Minn. 500, 219 N. W. 863; American Exp. Co. v. Cosmopolitan Tr. Co. 239 Mass. 249, 132 N. E. 26; Spiroplos v. Scandinavian-Am. Bank, 116 Wash. 491, 199 P. 997, 16 A. L. R. 181; Legniti v. Mechanics & M. Nat. Bank, 230 N. Y. 415, 130 N. E. 597, 16 A. L. R. 185; In re Receivership of Security Sav. Bank, 205 Iowa, 171, 217 N. W. 831; Grammel v. Carmer, 55 Mich. 201, 21 N. W. 418, 54 Am. R. 363; Harrison v. Wright, 100 Ind. 515, 58 Am. R. 805; Jewett v. Yardley (C. C.) 81 F. 920; Clark v. The Toronto Bank, 72 Kan. 1, 82 P. 582, 2 L.R.A.(N.S.) 83, 115 A. S. R. 173; Citizens Nat. Bank v. Dowd (C. C.) 35 F. 340; People v. Merchants & M. Bank, 78 N. Y. 269, 34 Am. R. 532; Lamro State Bank v. Farmers State Bank, 34 S. D. 417, 148 N. W. 851.

Such cases as Stein v. Kemp, 132 Minn. 44, 155 N. W. 1052; Blummer v. Scandinavian Am. State Bank, 169 Minn. 89, 210 N. W. 865; Blythe v. Kujawa, 175 Minn. 88, 220 N. W. 168, 60 A. L. R. 330; Eastman v. Farmers State Bank, 175 Minn. 336, 221 N. W. 236; and Winkler v. Veigel, 176 Minn. 384, 223 N. W. 622, arose on different facts, where there was no purchase of a draft and where the money was either deposited in escrow or for a special purpose, on some agreement with the bank whereby the bank became the agent of the depositor and agreed to devote the money deposited to the special designated payment or purpose or to hold the money for such purpose. Here the plaintiff used the money to purchase a negotiable draft. The money was the price of the draft and became the property of the bank, and there was no agency or trust relation created.

The record presents a second question, not extensively argued. On March 23, 1931, the defendant bank was reorganized and reopened for business under an agreement with more than 90 per cent of its depositors and unsecured creditors, whereby such depositors and creditors agreed to accept a reduction of 60 per cent on the amounts of their deposits and claims, and to accept in full payment of such deposits and claims 40 per cent of the amount

owing to each of them, to be paid at times in such agreement stated. The plaintiff did not join in such agreement. The reorganization and reopening of the bank was had under L. 1925, p. 37, c. 38, 2 Mason, 1927, § 7690-1, which provides that a closed bank may be reorganized and reopened under a plan and agreement of 90 per cent of the depositors and unsecured creditors of the bank, when approved by the commissioner of banks. It further provides that all other depositors and unsecured creditors shall be bound by such agreement the same as if they had joined in the execution thereof.

If the plaintiff was not bound by this reorganization agreement, he would be entitled to recover the full amount of the draft in question as a general creditor of the bank, even if not a preferred creditor.

The constitutionality of L. 1925, p. 37, c. 38, was directly raised and fully argued in the case of Hoff v. First State Bank, 174 Minn. 36, 218 N. W. 238, and the law was there held constitutional and valid. Nothing new has been presented in the present case to change our views on that question. A brief statement as to the scope and effect of that decision may be of value. In that case plaintiff brought suit to recover on a certificate of deposit against a bank which was at the time the action was brought doing business and presumably solvent. Plaintiff stated a cause of action in his complaint by alleging the issuance of the certificate of deposit, that it was past due, and that payment had been refused. Defendant by its answer alleged that after the issuance of the certificate of deposit the bank became insolvent and was closed and taken over by the commissioner of banks; that thereafter the bank was duly reorganized and reopened, under the law we have cited, under an agreement whereby 90 per cent of the depositors and unsecured crditors agreed to a 50 per cent reduction in their claims. A demurrer was interposed to this answer and overruled by the trial court. We sustained the order overruling the demurrer, thereby holding that the answer stated a good defense. We said in that connection that the action of the commissioner of banks was not conclusive against nonassenting creditors, and that they might, by

suit or appropriate action, contest the validity of the act of the commissioner. Except on constitutional grounds, no suggestion or claim is made in the present case that the reorganization agreement and proceeding were irregular or invalid, so that question is not presented.

The defendants concede that plaintiff is entitled to recover 40 per cent of his claim and the interest thereon from September 26, 1930. There is no suggestion that there is any benefit to be derived from a new trial.

The order appealed from is reversed with direction to the trial court to amend its findings of fact and conclusions of law in accordance with this opinion so as to direct judgment in favor of the plaintiff for $65.43, being 40 per cent of his claim, with interest thereon at six per cent per annum from September 26, 1930.

Order reversed.

