## SMITH v. ZEMURRAY.
### No. 7153.

Circuit Court of Appeals, Fifth Circuit.
Feb. 12, 1934.

As Amended on Denial of Rehearing March 1, 1934.

**6**

H. M. Voorhis, of Orlando, Fla., for appellant.

Hugh Akerman, of Orlando, Fla., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Another effort to escape the inexorable equality of distribution among creditors of failed banks, by asserting that the claimant is not a creditor but a beneficial owner of a fund held in trust, this case grounds the claim of preference on constructive fraud.

Appellee, holding a dishonored New York draft for $5,000 issued to him before it closed by the failed bank, claiming that the circumstances of its issuance raised a trust in his favor, brought this suit to recover that amount as his funds in the possession of the receiver. The District Judge thought he made his case out. From the decree charging the claim upon the funds in his hands, and ordering it preferentially paid, the receiver appeals.

In support of the decree appellee relies on the evidence of officers and directors of the bank as to its condition of insolvency, and their knowledge of it on August 1, when his transaction with it took place. He relies especially on the court's finding that this evidence establishes that when the New York draft was issued, the bank was, within the knowledge of its officers, hopelessly and irretrievably insolvent. He relies, too, on these facts testified to by Robinson, Zemurray's agent. Having secured from one of Zemurray's debtors a draft in Zemurray's favor on the Orlando Bank & Trust Company, of Orlando, Fla., Robinson took it on August 1 to the collector's window, telling the clerk that he was there to make collection on the draft and remit the proceeds to Zemurray in Alabama. Upon the clerk's suggestion that the remittance be by New York exchange, he took the bank's draft on New York and forwarded it for collection to the Florida National Bank of Jacksonville. Before it reached New York, the Orlando bank had closed and payment was refused.

Appellant urges that the decree was wrong both because the record does not support the finding of hopeless and irretrievable insolvency within the knowledge of the officers on August 1, and because, if it does, this would not justify the further finding on which the decree rests, that the bank, by fraudulent silence, got into its possession money of Zemurray's which has passed to the receiver. It presses upon us as conclusive against the decree, the fact that no money of Zemurray's has ever gone into the bank, and therefore none is there in the receiver's hands to which he can lay claim.

To the appellee's "as if" argument, " 'the matter is to be treated as though Robinson had presented the check to the teller and on receiving the money had paid it back over the counter to buy a draft,' American National Bank v. Miller, 229 U. S. 520, 33 S. Ct. 883, 57 L. Ed. 1310," the receiver replies: "Not so. We know from Robinson's own testimony that this did not occur. We know from it that what did occur was an exchange of the paper of a bank, hopelessly insolvent, if plaintiff is right, in the form of an accepted draft on it, for paper of the same bank in the form of its draft on New York. This and nothing more." He argues, too, that when what actually occurred is known, it is idle to speculate on what might have been the legal effect of an entirely different occurrence. Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288.

■■ We think appellant right on both of the points he advances. In Ill. Central Ry. v. Rawlings, 66 F. (2d) 146, 148, we had occasion to examine into and apply to a case of deposits made in a national bank shortly before it closed, the principles determining when such receipt is fraudulent. An examination of the record in this case, in the light of those principles, convinces that while the situation of the bank was here as it was there, precarious, there was no fraud here as there was not there, in keeping the bank open and transacting its business in the usual way, and that

no trust could arise out of doing so. In fact, that case was a much closer one than this. Here, on the very day it is claimed that a state of hopeless insolvency existed, the deposits of the bank show an increase of $600,000. Here all of the witnesses agree that with a little additional help they could have kept on, and that none of them thought the bank was insolvent. The closing seems to have been dictated, not by a conviction of insolvency, but as the result of a general state of discouragement over withdrawals, brought to a focus by the act of the city of Orlando in withdrawing "a lot of cash" on the 3d, just prior to noon of the last day on which the bank was open. Without fraud, if the purchase of the New York draft had been for cash, there could have been no trust. Angelo Legniti v. Mechanics' & Metals Nat. Bank, 230 N. Y. 415, 130 N. E. 597, 16 A. L. R. 185; Amos v. Baird, 96 Fla. 181, 117 So. 789.

■■ Its other point, that assuming insolvency, nothing occurred here to raise a trust, is equally well taken. Efforts like this one to obtain preferential treatment over others who have dealt in equally good faith with a bank which closes may not succeed, except upon a clear showing that, established by agreement or raised by law, there exists not a debtor creditor, but a trust relation with regard to funds of the claimant, which committed to the custody of the bank, have passed into the hands of the receiver. In these cases, not what might have been the result in law if the transaction had been handled in a different way, but what actually did occur with reference to its happening, determines the rights of the parties.

The case on which appellee relies as raising a trust out of a sale by a bank of its drafts under circumstances making that sale fraudulent, Cochrane v. Florida E. Coast Ry., 107 Fla. 431, 145 So. 217, and those cited and discussed in Leach v. Central Trust Co., 203 Iowa 1060, 213 N. W. 777, 57 A. L. R. 1165, and Paul v. Farmers' & Merchants' State Bank, 187 Minn. 411, 245 N. W. 832, 84 A. L. R. 1466, have no application here.

Here there was only a conversion of the bank's paper from one form to another at the request of the holder. If the bank was hopelessly insolvent when it drew the New York draft, it was hopelessly insolvent when the draft on it was presented for payment. If it was hopelessly insolvent when the draft on it was presented, it was forbidden by law to honor it. Out of the exchange of a draft on a hopelessly insolvent bank for its own draft on a correspondent, equity will not raise a trust, or permit a preference to spring.

The decree is reversed, and the case is remanded, with directions to dismiss the bill without prejudice to claimant's right to prove as a general creditor.