SOL POLOTSKY *v.* ARTISANS SAVINGS BANK, a corporation of the State of Delaware.

(*September* 23, 1935.)

RICHARDS and REINHARDT, J. J., sitting.

*Herman Cohen* and *Morris Cohen* for plaintiff.

*Bayard W. Allmond* for defendant.

Superior Court for New Castle County, No. 153, May Term, 1934.

REINHARDT, J., delivering the opinion of the Court:

By agreement of counsel the case was heard by the Court without the intervention of a jury. There was little conflict in the evidence and the Court makes the following findings of facts:

On January 6th, 1934, the plaintiff, desiring to withdraw from the bank the sum of $200, requested the defendant to give him its check, drawn by it on the Wilmington Trust Company of this City, payable to plaintiff. The plaintiff gave as his reason for this that he desired to pay $200 on account of a contract which he had entered into with The Eugenics Company of Alliance, Ohio. At his request and upon his instruction the officer of the defendant bank wrote on the back of the check the endorsement thereof to The Eugenics Company and the plaintiff signed it. The check is in the following form and is endorsed on the back of it as follows:

Check

No. 44212                Artisans Savings Bank                $200.00

Wilmington, January 6, 1934

Pay to the order of Sol Polotsky———————————————————

Artisans
Savings Bank $200 and 00c————————————————Dollars

To the—                                    Robert D. Kemp
Wilmington Trust Company                       President
  Second Street Office                  J. Walter Boyer
  Wilmington, Delaware                        Treasurer

Endorsed
Pay to the order of
The Eugenics Co.
Sol Polotsky

Pay to the order of
The Mount Union Bank
Alliance, Ohio
The Eugenics Company

Pay to the order of
The Mount Union Bank
Alliance, Ohio
The Mount Union Chemical Co.

Jan  9 1934   Pay to the order of any bank or banker.
              All prior indorsements guaranteed.
              Mt. Union Bank.

Jan 10 1934   Pay to the order of any bank, banker or
              trust  company  all  prior  indorsements
              guaranteed.
              Guarantee Trust Company of New York
              City.

Jan 11 1934   Pay to the order of any bank, banker, or
              trust  company,  all  prior  indorsements
              guaranteed.
              Federal Reserve Bank of Philadelphia.

At the time, to-wit, January 6, 1934, when the check was delivered to Polotsky, he presented his pass-book to the bank and the necessary entries were made showing the withdrawal by plaintiff of the sum of $200. The bank usually pays withdrawals in cash but plaintiff requested the bank not to pay him in cash but, in lieu thereof, to give him the bank's check, which was done and entry made in plaintiff's pass-book and on the bank's ledger showing the

transaction. The check in question and drawn by the Artisans Savings Bank on the Wilmington Trust Company was then endorsed by the plaintiff and mailed by him to The Eugenics Company at Alliance, Ohio. Four days later —on January 10—the plaintiff requested the defendant, Artisans Savings Bank, to stop payment on said check. After taking the matter under advisement, the bank declined to stop payment upon the advice of counsel and the check was, on the latter date, paid by Wilmington Trust Company, the drawee of the check.

It is in evidence and nowhere denied by the plaintiff that the plaintiff, at the time he requested payment be stopped on the check, did not advise the bank that he had any defense for want of consideration or fraud, or that any holder of the check was not a holder in due course.

It is also in evidence that the plaintiff gave as his sole reason for wanting to stop payment on the check, that he was a poor man and could not perform the contract by paying an additional $304 required of him.

The contract between plaintiff and The Eugenics Company was admitted in evidence. It provided for the purchase by plaintiff from The Eugenics Co. of certain birth control literature and for the distribution of the literature by plaintiff, by U. S. mail, among "women prospects." Plaintiff sent the check for $200 to Eugenics Co. in part compliance with the terms of this contract. Two days after sending the check plaintiff learned that the contract providing for the distribution of literature was probably illegal in that it was a possible violation of at least two provisions of the statutes of the United States. This is nowhere denied by the defendant. Plaintiff then requested the defendant Artisans Savings Bank to stop payment on the check. The bank, after some delay, refused the request

to countermand payment of the check and it was paid by the drawee. Plaintiff then made demand upon the defendant for $200, which was refused, and he brings this action to recover his said deposit, which he contends was wrongly paid because the defendant refused to countermand payment of the check at the request of plaintiff.

The plaintiff contends that on this evidence he is entitled to a verdict against the bank for $200. He contends that as payee named in the check he has the right to call upon the maker to countermand payment by the drawee bank. In other words, he contends that the payee in the check has the same right of countermand as the maker of the check.

The check in question is a bank draft. Such a draft has been defined to be "a check, draft, or other order for payment of money, drawn by an authorized officer of a bank upon either his own bank or some other bank in which funds of his bank are deposited." 1*Words and Phrases, Second Series, p.* 398.

▇ The plaintiff, Polotsky, purchased of the defendant, Artisans Savings Bank, its draft drawn upon the Wilmington Trust Company, made payable to the order of the plaintiff and by plaintiff endorsed to The Eugenics Company. Such a transaction is that of purchase and sale. It is no longer executory but is an executed and completed transaction, and the cases generally so hold.

In the case of *Montana-Wyoming Ass'n of Credit Men v. Commercial National Bank,* 80 *Mont.* 174, 259 *P.* 1060, 1061, the Court said concerning a transaction such as this:

"It is an established custom of long standing among banks to sell credit usually represented by check or, to employ the usual term, by draft. A bank having credit with a correspondent will sell its check drawn upon the correspondent, with direction to the correspond-

ent to pay the same upon presentation. * * * The check is not the credit but represents the credit. 'It is not itself money or credit. It is simply used as such. The money paid the bank by the purchaser of the draft becomes the bank's money. The transaction is that of purchase and sale.' "

In the case of *Bobrick, Trustee, v. Second National Bank of Hoboken,* 175 *App. Div.* 550, 162 *N. Y. S.* 147, 149, the facts were, one Mackenzie, having funds on deposit with the defendant bank, wired or wrote defendant to issue three checks to Bobrick, Trustee—two each for $1,000 and one for $500. The checks were so issued, drawn upon the National Park Bank of New York, and were sent to Bobrick, Trustee. Before they were presented to the drawee bank for payment the Second National Bank of Hoboken, the drawer, received notice from Mackenzie to stop payment and it did so, and the National Park Bank, the drawee, upon notice also stopped payment on the three checks. Suit was brought by payee, Bobrick, Trustee, against the Hoboken bank, the drawer. The New York Court in describing the kind of transaction this was, used the following language:

"The checks having been issued and delivered to the payee, the transaction upon which the bank entered at his request was a completed one, so far as the payee was concerned. * * * Presumably, on these facts, Mackenzie, for a sufficient consideration moving from the plaintiff to him, had purchased the checks of the defendant for the plaintiff, and caused them to be delivered to him, and, if so, it was beyond the power of Mackenzie or the defendant to stop payment thereof."

In the case of *Moe v. Bank of United States,* 211 *App. Div.* 519, 207 *N. Y. S.* 347, 349, the facts were that plaintiff Moe purchased from the Bank of the United States a check or draft for 100,000,000 German marks, payable by the Deutche Bank of Berlin, for which the sum of $487.50 was paid. Shortly after the purchase of the draft it was presented to the Deutche Bank several times and payment refused. Moe then brought action against the Bank of the

United States to recover $487.50, the price he paid for the draft. The Court in describing the kind of transaction this was, used the following language:

"The check pleaded in the complaint is a foreign bill of exchange, and the transaction described in the complaint was an executed purchase of the foreign bill. The contract being an executed contract, there can be no recision thereof, and no action for money had and received will lie."

In the case of *American Express Co. v. Cosmopolitan Trust Co.,* 239 *Mass.* 249, 132 *N. E.* 26, 28, the facts were, that plaintiff paid to the defendant $92,500 and received from the defendant its draft payable to order of plaintiff, drawn upon an Italian Bank at Genoa, Italy, for the sum of 2,000,000 lire. The draft was duly presented to the Italian Bank, the drawee, and the latter refused payment because the maker of the draft and the Commissioner of Banks of Massachusetts had ordered the Italian Bank to stop payment of the draft. The draft was duly protested. Suit was brought by American Express Company, payee, against the Cosmopolitan Trust Company, the drawer of the draft. The Massachusetts Court in describing the kind of transaction this was, used the following language:

"The transaction was one of purchase and sale. It was not executory, it did not establish a trust or an agency, and it was completed with the delivery of the draft."

In the case of *Goshen National Bank v. State of New York,* 141 *N. Y.* 379-387, 36 *N. E.* 316, 318, the Court said:

"Bank or cashier's drafts are used so enormously at the present time in the payment or settlement of debts, and in other commercial transactions, that they have almost acquired the characteristics of money. So long as they are drawn on behalf of a solvent bank, and upon a solvent drawee, and signed by one of the officers usually signing such instruments, they are regarded by the commercial community very much the same as so much cash."

In the case of *Gravenhorst v. Zimmerman,* 236 *N. Y.* 22, 139 *N. E.* 766, 769, 27 *A. L. R.* 1465, the Court said:

"One who secures a draft obtains a written order by the drawer upon the drawee, which by commercial usage, and even by statutory enactment in some jurisdictions, has come to be recognized as the symbol and equivalent of money, and which enables the one who has obtained it without further action by the drawer to secure from the drawee the moneys which it represents. In consideration of the money paid by him he has actually obtained an instrument for the payment of money, and which is regarded as its equivalent, and it is perfectly natural to speak of such a transaction as resulting in the executed purchase of a draft."

Other cases in which the same conclusion is reached, though not always by the same reasoning, are *Legniti v. Mechanics' & Metals Nat. Bank of New York*, 230 *N. Y.* 415, 130 *N. E.* 597, 16 *A. L. R.* 185; *Holland v. Mutual Fertilizer Co.*, 8 *Ga. App.* 714, 70 *S. E.* 151; *Kohler v. First Nat. Bank of Tonasket*, 157 *Wash.* 417, 289 *P.* 47; *Strohmeyer & Arpe Co. v. Guaranty Trust Co.*, 172 *App. Div.* 16, 157 *N. Y. S.* 955; *Paul v. Farmers' & Mechanics' State Bank*, 187 *Minn.* 411, 245 *N. W.* 832, 84 *A. L. R.* 1466.

In opposition to the line of reasoning in the above cited cases, counsel for the plaintiff urges that the bank draft in the instant case could only rightfully be paid to a holder in due course and that payment thereof otherwise was wrongful. He contends that the defendant bank was notified by plaintiff of the illegal consideration for the endorsement by plaintiff as payee in the draft, and that the bank was requested by plaintiff to countermand payment of the draft and upon refusing to do so incurred liability to the plaintiff for its action.

In support of his contention there are cited the following cases: *Drinkall v. Movius State Bank* (1901), 11 *N. D.* 10, 88 *N. W.* 724, 57 *L. R. A.* 341, 345, 95 *Am. St. Rep.* 693; *State v. Tyler County State Bank* (*Tex. Com. App.*), 277 *S. W.* 625, 42 *A. L. R.* 1347.

We have read and carefully considered these cases and others to the same effect but we cannot agree with the rea-

soning found therein. We think that these cases overlook the distinction between a bank draft and an ordinary check wherein the maker is not a banking institution.

By the weight of authority we think that a bank draft, purchased by payee for cash, is a completed transaction and therefore not subject to countermand by the maker or payee. Such a draft differs from an ordinary draft or check in that by long commercial usage it has come to be regarded as an instrument for the payment of money. To hold that the maker of a bank draft which it has sold for cash to payee, who has endorsed it, may countermand payment upon the request of the payee would be, in effect, to place an undue burden upon the maker of the draft. It might injuriously affect the credit which rightfully belongs to this class of commercial paper and thereby seriously impair its usefulness.

The situation is well described in the language of the Washington Court in the case of *Kohler v. First National Bank of Tonasket,* 157 *Wash.* 417, 289 *P.* 47, *at page* 50:

"If the contention of the respondent be sustained, it would unsettle the basic principles of our entire law of commercial paper. Literally millions of dollars worth of business is transacted in the United States every day by means of bank drafts, certified checks, and cashiers' checks. They are uniformly by business houses placed in the same category, the credit in each case being extended, not to the person delivering them, but they are accepted on the faith and credit of the bank issuing them. There is no essential difference between a bank note issued by a national bank and its certified check, cashier's check, or draft, other than the fact that the bank note is backed, not only by the promise of the bank, but this promise is secured. All this kind of paper is the bank's unconditional promise to pay, and, if it be held that payment can be stopped on a bank draft, then it must follow that payment can be stopped on a certified check and a cashier's check, and we have made uncertain commercial paper on the faith of which much of the business of the United States is transacted."

Having reached the conclusion that a bank draft purchased by payee for cash is a completed transaction and

therefore not subject to countermand by the maker or payee, we are constrained to find a verdict in favor of the defendant, Artisans Savings Bank, and against the plaintiff, Sol Polotsky, for costs of suit. Let judgment be entered accordingly.

NOTE. This judgment was affirmed by the Supreme Court on writ of error. See page 151.