(No. 2276.    Sept. 24, 1919.)
# LUNA v. MONTOYA.

## SYLLABUS BY THE COURT.

1.    Where an alteration is apparent on the face of an instrument in suit, there is no presumption as to whether such alteration was made before or after the execution of the instrument, and the question of the alteration and its binding effect on the parties after its introduction are questions to be considered in the light of all the evidence, extrinsic and intrinsic, and decided by the judge sitting as a jury, or by the jury under proper instructions.    P. 435

2.    Where an alteration is apparent on the face of an instrument in suit, the burden of proof to explain such alteration is not upon the party seeking to recover under it, but upon the one who alleges that the alteration has been made in the instrument.    P. 435

3.    An instrument which reads as follows: "I testify that on November 30, 1903, Santos Luna deposited six hundred dollars in my care, I paying him five per cent. interest per annum.    This money is guaranteed by me, Max H. Montoya" —is properly treated and considered as a certificate of deposit, and the statute of limitations begins to run against the depositor at the time when demand for payment is made.
P. 438

Appeal from District Court, Socorro County; M. C. Mechem, Judge.

Action by Francisco Luna, administrator of the estate of Santos Luna, deceased, against Max H. Montoya.    Judgment for plaintiff on findings of fact and conclusions of law, and defendant appeals.    Affirmed.

JAMES G. FITCH, of Socorro, for appellant.

If alteration on face of instrument is suspicious then party producing it has burden of explaining its appearance; if not suspicious the burden is on the opponent to show that alteration was unauthorized.

2 Am. & Eng. Enc., 272 to 275; 1 R. C. L., Sec. 77; 2 C. J., Sec. 198; Catlin Coal Co. v. Lloyd, 180 Ill. 398, 54 N. E. 214.

It has been held that where the alteration is against the interest of the party producing the writing, it is not suspicious.   But where the alteration is obviously beneficial to the party producing and claiming under the writing by enlarging his rights, it is almost universally held to be suspicious.

2 Am. & Eng. Enc., 278; 2 C. J., Sec. 216.

And cases above cited; also

Hill v. Nilms, 86 Ala. 442, 5 So. 796; Glover v. Gentry, 104 Ala. 222, 16 So. 38; Hart v. Sharpton, 124 Ala. 638, 27 So. 451; Sheldon v. Hawes, 15 Mich. 519; Wilson v. Estate of Hotchkiss, 81 Mich. 172, 45 N. W. 838.

Bank of Commerce v. Harrison, 11 N. M. 50, is to be distinguished from this case.

Demand, by return of certificate of deposit, is necessary prerequisite for bringing of suit upon it.

Fels Point Sav. Inst. v. Weedon, 18 Md. 326, 81 Am. Dec. 603; Sharp v. Citizens' Bank, 70 Neb. 758, 98 N. W. 50; Tobin v. McKinney, 14 S. D. 52, 84 N. W. 228, and 15 S. D. 257, 88 N. W. 572; Murphy v. Pacific Bank, 130 Cal. 542, 62 Pac. 1059; Morse on Banks and Banking Sec. 297.

Other cases hold that the certificate is in the nature of a promissory note, payable either upon demand or upon the time specified in the certificate; and hence, under the established doctrine, no demand is necessary.

Brummagim v. Tallant, 29 Cal. 503; Mereness v. First Nat. Bank, 112 Iowa 11, 83, N. W. 711; Mitchell v. Easton, 37 Minn. 335, 33 N. W. 910; Curran v. Witter, 68 Wis. 16, 31 N. W. 705.

If no cause for delay is shown the demand should be made at least within the time limited by the statute for

bringing the action; and, in the absence of special circumstances, if no demand be shown within that time, it will be presumed to have been made at the expiration of that period, from which time the statute will begin to run.

Keithler v. Foster, 22 Ohio St. 27; Palmer v. Palmer, 36 Mich. 487, 24 Am. Rep. 605; Volli v. Wirth, 164 Mich. 21, 129 N. W. 9; Fallon v. Fallon, 110 Minn. 213, 124 N. W. 994; Ball v. Keokuck R. Co., 62 Iowa, 755, 16 N. W. 59; Kraft v. Thomas, 123 Ind. 513, 24 N. E. 346; Landis v. Saxton, 105 Mo. 486, 16 S. W. 912; Pittsburgh R. Co. v. Byers, 32 Pa. St., 22, 72 Am. Dec. 770; Freeman v. Ingerson, 143 Mich. 7, 106 N. W. 278.

Other cases seem to hold that the demand must be made within the statutory period without qualification.

A. T. & S. F. Ry. Co. v. Burlingame Tp., 36 Kas. 628 14 Pac. 271; Oleson v. Wilson, 20 Mont. 544, 52 Pac. 372.

It appears to be the settled rule of this Court, in construing our statute of limitations, that implied or equitable exceptions are not to be grafted upon the statute, where the Legislature has not made the exception in express words of the statute. That as a general rule, the courts are without power to read into such statutes exceptions which have not been embodied therein, however reasonable they may seem.

Buss v. Kemp Lumber Co., 170 Pac. 54; Musgrave v. McManus, 173 Pac. 196.

NICHOLAS & NICHOLAS, of Socorro, for appellee.

Appellant pleaded material alteration of the instrument after its execution, hence burden of proving this defense by a preponderance of the evidence rested upon him.

1 Enc. Evidence 773 and notes; Sturm v. Baker, 150 U. S. 310; 37 Law Ed. 1093; Cavitt v. Robertson (Ok.) 142 Pac. 299; Galloway v. Bartholomew (Or.) 74 Pac. 467; Slyfield v. Willard (Wash.) 86 Pac. 393.

If the instrument in suit were an ordinary bank certificate of deposit, although there are authorities to the contrary, yet the decided weight, both of reason and authority, undoubtedly establish the following propositions:

1.   That a demand is necessary to the maturity of the obligation and to a right of action thereon.

2.   That the statute of limitations does not begin to run until demand.

3.   And that demand need not be made within the statutory period from the excution and delivery of the instrument.

Bank v. Harrison, 11 N. M. 50; 2 Daniel's Neg. Inst. (6th Ed.) 1907, Sec. 1707a; Saving's Institution v. Weedon, 18 Md. 320; 81 A. D. 603; Branch v. Dawson, (Minn.) 23 N. W. 552; Tobin v. McKinney, 14 S. Dak. 52; 15 S. Dak. 257; 91 A. S. R. 688-694; Elliott v. Bank, (Iowa) I L. R. A. (N. S.) 1130 and notes; Re Gardner, 228 Pa. 282; 77 A. 509; 29 L. R. A. (N. S.) 685 and notes.

In the following cases written instruments, quite similar in their terms to the instrument here involved, and issued by persons other than bankers, were held to be, either certificates of deposit in fact or to be of similar character and governed by the same rules of law applicable to certificates of deposit:

Neall v. United States 118 Fed. 699; Payne v. Gardner, 29 N. Y. 146; Boughton v. Flint, N. Y. 476; Smiley v. Fry, 100 N. Y. 262; Sullivan v. Fosdick, 10 Hun 173; Sheldon v. Heaton, 88 Hun 535; 34 N. Y. S. 856; Patterson v. Blanchard, (Ga.) 25 S. E. 572; Long v. Straus, 107 Ind. 94; 57 A. R. 87.

## STATEMENT OF FACTS.

This is an action by an administrator upon a writing in Spanish signed by appellant, found on page 4 of a book purporting to be a time book of appellee's intestate, a literal translation of which is as follows:

"I testify that in November 30, 1903, Santos Luna deposited $600 in my care, I paying 5 per hundred of interest per annum. This money is guaranteed by me.

"Max H. Montoya."

The writing on the opposite page, which is also in the handwriting of appellant, was also introduced, and other pages are referred to in the evidence. The trial judge, being of the opinion that it was necessary and proper that this writing should be inspected by this court, ordered the transmittal of the book to the clerk, and it is before the court for consideration in connection with the transcript, under rule 3, par. 7 (153 Pac. xviii).

Appellant, in his answer, denied that plaintiff's intestate had ever deposited with him $600 in money, or any other sum, and in substance alleged that the writing in question was given by him and accepted by the intestate as a memorandum of the amount or part of the amount of a claim due the intestate from the estate of a deceased brother of appellant, for which estate, or rather for the administratrix thereof, appellant at the time was acting as agent; that the memorandum was originally, to the best of his recollection and belief, for $500, and was afterwards raised to $600 without his knowledge or consent. Appellant also pleaded the six-year statute of limitations.

The court, by its second, third, and fourth findings, held that the alteration was apparent on the face of the instrument; that it therefore was not an alteration of a suspicious character, so as to place the burden of proof upon plaintiff; and that the proof failed to show that the alteration was made after execution and delivery, or at such other time as not to be binding upon

appellant; and as conclusions of law the court held that the instrument was in the nature of an individual certificate of deposit; that the rights and liabilities of the parties were governed by substantially the same rules and principles of law applicable to bank certificates of deposit; that appellant was not relieved from his liability upon said instrument by reason of the alteration apparent upon the face of the same; that the instrument was not barred by the statute of limitations; and that appellee was entitled to recover $600, with 5 per cent. interest from the date of the writing. To each of these findings and conclusions appellant took an exception at the time. Judgment was thereupon rendered against him accordingly.

### OPINION OF THE COURT.

RAYNOLDS, J. (After stating the facts as above). Two questions are presented by this appeal: First, the ruling of the trial court that the alteration apparent on the face of the writing, raising the amount from $500 to $600, was not of a suspicious character, so as to place the burden of explaining the same upon appellee; and, second, the ruling of the court that the action was not barred by the statute of limitations. The trial court found as follows:

"That said instrument on its face shows no erasure or attempted erasure, and that said alteration, so apparent on the face of said instrument, is not an alteration of suspicious character, so as to place the burden of proof upon plaintiff to explain the same." To which finding defendant then and there objects and excepts.

"That the proof fails to show that said alteration of said instrument was made after its execution and delivery by the defendant or at such other time as not to be binding upon him." To which finding defendant then and there objects and excepts.

[1, 2] It is urged by the appellant as a ground for reversal of this judgment that the trial court misapplied the rule of evidence as to the burden of proof on the subject of altered instruments; that, although there was conflicting evidence as to the handwriting of the figure

"6," the trial judge did not base his finding upon this evidence, but upon inspection of the instrument, from which inspection he concluded that the alteration, being apparent on its face, was not of a suspicious character, so as to place the burden of proof on the plaintiff. It is conceded by the appellant that alteration alone does not make an instrument suspicious, where it is apparently altered to correct some obvious mistake and carry out the intentions of the parties (Hart v. Sharpton, 124 Ala. 638, 27 South, 451); but he contends that the element of interest is a most important test in determining whether an apparent alteration is suspicious or not, and that the trial judge overlooked this important factor.

The authorities on the subject are in hopeless confusion. As is said in a note to Burgess v. Blake, 128, Ala. 105, 28 South, 963, 86 Am. St. Rep. 78, at page 128 of the last citation:

"Where the alteration is apparent, the authorities are hopelessly divided as to the presumptions arising from such apparent alteration. Any attempt to reconcile them would be useless, and an accurate classification of their varying views is impossible. They seem to fall, however, into four general classes, each of which is representative of a view opposed to that of the others: (1) One line of cases holds that no presumption arises from an alteration apparent on the face of the instrument; but that the entire question of the time when the alteration was made is for the jury to consider in the light of all the evidence, intrinsic and extrinsic. (2) Another holds that an alteration apparent on the face of the paper raises a presumption that it was made after the execution and delivery. (3) A third line of authorities holds that the presumption that the alteration was made after execution arises only where the alteration or the facts surrounding it are suspicious; and, finally, it is held by another group of courts: (4) That an alteration, apparent on the face of the paper, is, without explanation, presumed to have been made before delivery. This classification of the authorities is, at best, approximate only, as many of the courts have taken compromise positions, holding the presumption to depend upon various matters, such as denial under oath that the paper was executed, the nature of the instrument—i. e., whether a specialty or not, etc."

"While the different views presented in the three paragraphs as to the presumptions arising from apparent alterations are seemingly in hopeless conflict, yet an examination of

the decisions leads to the opinion that, whatever doctrine may be theoretically adhered to in any particular jurisdiction regarding the presumption as to the time of apparent alterations, yet in the greater number of cases the person who claims under or offers in evidence an instrument which is at all suspicious by reason of an apparent alteration will be required to explain and remove the suspicion." 1 R. C. L. "Alteration of Instruments," par. 77.

The words "suspicious alterations," as used in the above quotation, have been given many different meanings by the abjudicated cases. No definite rule can be deduced to determine the circumstances connected with an apparent alteration which will be regarded as suspicious and will require explanation by the party relying on the altered instrument. 2 C. J. "Alteration of Instruments," par. 199. The weakness of an objection to the rule above will be found in the following quotation:

"This furnishes no definite rule by which to determine when the burden is upon the holder to explain the alteration and when it is not. Who is to determine, and by what test, whether the alteration is suspicious? * * * And it seems to us that the rule just referred to amounts to nothing more than saying that in some cases this intrinsic evidence may tend to prove that the alteration was made after delivery, and therefore throw the preponderance on that side, unless the holder of the instrument produces extrinsic rebutting evidence. Thus construed, we would find no special fault with the rule. But it is incorrect to call this a presumption of law; it is simply an inference of fact drawn from evidence in the case." Wilson v. Hayes, 40 Minn. 531, 42 N. W. 467, 4 L. R. A. 196, 12 Am. St. Rep. 754.

In the present case the lower court found the alteration to be so apparent that it was not an alteration of a suspicious character. We have inspected the instrument and agree with the conclusion reached by the trial judge. But the question before us is one as to the burden of proof, when an instrument which has been apparently altered is sued upon by one who will benefit by such alteration. The rule to determine this question, which seems to us best and supported by reason of authority, is that no presumption arises from an alteration apparent on the face of the instrument, but that the entire question of the time when the alteration was made is

for the jury to consider in the light of all the evidence, intrinsic and extrinsic.

It is evident from the adjudicated cases that the courts which maintain the position that no presumption arises from an apparent alteration of an instrument in fact hold that such instrument is not an altered instrument within the meaning of the phrase. They hold, in effect, that the instrument as changed or altered is the instrument which the parties executed. As before stated, we believe this to be the proper rule. To modify this rule, by casting the burden of proof on the plaintiff or the defendant, according as the trial judge may deem the alteration suspicious or not, changes a rule of law into an inference of fact, which inference of fact the court should not pass upon, but leave to the jury.

The trial court, in holding that the apparent alteration was not one of a suspicious character, so as to place the burden of proof upon the plaintiff, reached the correct conclusion, and properly placed the burden of proof upon the defendant, who alleged that the instrument had been altered. We hold, however, that the correct rule to be applied in case of apparent alteration of instruments is this: That there is no presumption from such apparent alteration, and that the question of alteration and its binding effect on the parties after the introduction of the instrument in evidence, are questions to be considered in the light of all the evidence, extrinsic and intrinsic, and decided by the judge sitting as a jury, or by the jury under proper instructions.

[3]   It is further urged by the appellant that the instrument in question was improperly treated as a certificate of deposit. Appellant concedes that the case of Bank of Commerce v. Harrison, 11 N. M. 50, 66 Pac. 460, correctly states the law in regard to certificates of deposit, but he contends that the doctrine therein announced should not be extended to the instrument involved in this case. The case of Bank of Commerce v. Harrison, supra, holds that the statute of limitations

does not begin to run against the holder of a certificate of deposit until he has made demand on the bank for payment of the money evidenced by the certificate of deposit. We hold that the same rule of law applies to the instrument involved in this suit. As was said by Mullins, J., in Payne v. Gardiner, 29 N. Y. at pages 171, 172:

"Questions as to the rights and remedies of depositors have generally, if not altogether, arisen in actions by and against banks; but it is every day's practice for persons having surplus funds to deposit them with merchants, lawyers, and other business men, and they are received as often as matters of favor to the person depositing as with a view to the advantage of the person receiving; and I apprehend that such persons believe that, before they can be sued for the money, a demand must be made of the deposit. Such a rule not only gives effect to the intention of the parties, but it is essentially just. Why should a demand be held necessary in the case of a deposit in a bank, and unnecessary in the case of a deposit with a private person? In both cases the depositor is not an ordinary borrower; that is to say, they do not solicit the deposit for their own benefit exclusively. In both they hold themselves out as willing to receive deposits, and to pay interest, perhaps, thereon. The same considerations which render proper demand before suit in the case of the one are equally operative in the case of the other. * * * I entertain no doubt but that the transaction in question was a deposit, and that the rights and liabilities of the parties are precisely the same as if the money had been in a bank; and hence there was no right of action against the depositaries until actual demand made, and the statute of limitations began to run from the same time. If such is the law, then the demand in question was not barred, and the judgment should be affirmed."

Finding no error in the record, the case is affirmed; and it is so ordered.

PARKER, C. J. and ROBERTS, J., concur.

### SYLLABUS BY THE COURT.

