THE HON. HENRY L. MYERS,
THE HON. ALBERT P. STARK,
THE HON. JOHN A. MATTHEWS,
THE HON. ALBERT J. GALEN, } Associate Justices.

---

MONTANA–WYOMING ASSOCIATION OF CREDIT MEN ET AL., RESPONDENTS, v. COMMERCIAL NATIONAL BANK ET AL., APPELLANTS.

(No. 6,149.)

(Submitted September 21, 1927. Decided October 10, 1927.)

[259 Pac. 1060.]

*Banks and Banking—Insolvency—Preference Claims—"Cashier's Check" — Definition — Purchaser of Check Failing to Advise Bank That Moneys are Trust Funds—Effect on Relationship of Parties.*

Banks and Banking—"Cashier's Check"—Definition.
　　1.　A cashier's check is a draft, or bill of exchange, drawn by a bank upon itself or some other bank in which funds of the former are deposited; it represents credit which the purchaser of such a check buys; the money paid the issuing bank becomes the bank's money, the transaction being one of purchase and sale, and no trust relationship is thereby established.

---

1.　See 3 R. C. L. 447.

[80 Mont. 174.]

Same—Issuance of Cashier's Check Creates Relation of Debtor and Creditor Between Bank and Holder of Check.

2. The relation between a bank issuing a cashier's check and the holder of the check is that of debtor and creditor.

Same—Insolvency—Preference Claims—Deposit of Trust Fund not Known to Bank as Intended to be Special Deposit Does not Make Bank Trustee for Benefit of Cestui Que Trust.

3. The mere fact that a deposit in a bank is one of trust funds, known to the bank to be such, there being nothing, however, to indicate that it is intended as a special deposit, does not of itself make the bank a trustee of the fund for the benefit of the cestui que trust so as to give him a preference over the general creditors of the bank in case of its suspension; the deposit is a general one of which the bank becomes the owner, the transaction creating the relation of debtor and creditor between it and the depositor.

Trusts and Trustees—Persons Dealing With Trustee in Ignorance of Fact That He is Trustee not Bound by Terms of Trust.

4. While those who deal with a trustee concerning the subject of his trust, with knowledge of the trust, are bound by the terms of the trust, those dealing with him in good faith and ignorant of the fact that he is a trustee or that a trust exists are not so bound.

Banks and Banking—Insolvency—Trustee in Bankruptcy Purchasing Cashier's Check With Trust Funds Without Informing Bank of Source of Money—Payee of Check not Entitled to Preference Claim.

5. Where a referee in bankruptcy for the purpose of forwarding money received by him on sale of the bankrupt's estate to the trustee in bankruptcy, purchased a cashier's check without informing the bank respecting the source or character of the money paid as the purchase price, and the bank became insolvent before the check could be cashed, the bank did not become a trustee of the money, even though *in custodia legis* while in the hands of the referee, and hence the payee of the check was not entitled to preference as against the general creditors of the bank.

---

[1] Banker's Check, 6 **C. J.**, p. 1181, n. 58. Banks and Banking, 7 **C. J.**, sec. 234, p. 593, n. 76; sec. 383, p. 673, n. 75. Cashier's Check, 11 **C. J.**, p. 23, n. 45.

[2] Banks and Banking, 7 **C. J.**, sec. 234, p. 594, n. 87 New.

[3] Banks and Banking, 7 **C. J.**, sec. 326, p. 641, n. 1, p. 642, n. 2; sec. 548, p. 752, n. 84.

[4] Trusts, 39 **Cyc.**, p. 526, n. 52, p. 527, n. 58.

[5] Banks and Banking, 7 **C. J.**, sec. 548, p. 752, n. 84.

*Appeal from District Court, Custer County; Frank P. Leiper, Judge.*

ACTION by the Montana-Wyoming Association of Credit Men, as trustee in bankruptcy of the estate of Charles A. Hexom,

---

3. See 3 **R. C. L.** 518.
4. See 26 **R. C. L.** 1351.

bankrupt, against the Commercial National Bank of Miles City and another. Judgment for plaintiff and defendants appeal. Reversed with direction to dismiss the action.

*Messrs. Loud & Leavitt,* for Appellants, submitted a brief; *Mr. Charles H. Loud* argued the cause orally.

*Mr. George W. Farr,* for Respondent, submitted an original and a supplemental brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff is the trustee in bankruptcy of the estate of one Hexom. W. W. Palmer is a referee in bankruptcy, residing at Miles City.

Upon the purchase of merchandise of the bankrupt estate, the purchaser, instead of transmitting the sale price, $600, to the trustee at Billings, paid it to the referee at Miles City. The referee, Mr. Palmer, desiring to remit the money to the plaintiff, went to the Commercial National Bank of Miles City, a going concern, gave the money to the draft clerk and requested a draft in favor of the plaintiff at Billings for the amount.

So far as the record discloses Mr. Palmer did not give the draft clerk or anyone else at the bank any information respecting the source of, or character of, the money in his possession. He was given a cashier's check for $599.40 in favor of "Mont. Wyo. Association Credit Men," the bank retaining sixty cents for its service. Mr. Palmer sent the check by mail to the plaintiff at Billings, Montana, where it was received on February 7, 1924. The plaintiff deposited the check in a Billings bank on the day of its receipt, and that bank mailed it to the Commercial National Bank of Miles City for payment. The date of its receipt by the Commercial National Bank is not shown definitely. That bank closed its doors on the 8th of February, 1924, and did not thereafter open for the transac-

tion of business. The check was returned to the Billings bank on February 11, 1924.

When the Commercial National Bank closed its doors it had on hand a sum of money much in excess of $600. A receiver for the closed bank having been appointed, the plaintiff presented its claim to him in due time and form, claiming a preferential right to the amount of money represented by the check, but the receiver allowed the claim as a general one. The plaintiff then brought this suit against the bank and its receiver for the purpose of having the claim declared preferential. The district court rendered judgment for the plaintiff, declaring the sum of $599.40 to be a preferred claim against the property and assets of the Commercial National Bank, to be paid by the receiver out of the funds of the bank in preference to any other claim of any other creditor not having a preferred claim, and directed the payment thereof accordingly. From that judgment the defendants have appealed.

A check is a bill of exchange drawn on a bank, payable on [1] demand. (Sec. 8592, Rev. Codes 1921.) A cashier's check is a bill of exchange drawn by a bank upon itself and accepted by the act of issuance. (Brannan's Negotiable Instruments Law, 4th ed., 877.)

It is suggested that while Palmer called for a draft he was given a cashier's check. There is no legal difference in the meaning of the terms. "A banker's check, as popularly understood, is a check, draft, or other order for payment of money, drawn by an authorized officer of a bank upon either his own bank or some other bank in which funds of his bank are deposited." (Michie, Banks & Banking, 1611; 7 C. J. 673.)

It is an established custom of long standing among banks to sell credit usually represented by check, or, to employ the usual term, by draft. A bank having credit with a correspondent will sell its check drawn upon the correspondent, with direction to the correspondent to pay the same upon presentation. A cashier's check is, in effect, a promise that

the issuing bank will pay the amount of the check on presentation. The check is not the credit but represents the credit. "It is not, of itself, money or credit. It is simply used as such. The money paid the bank by the purchaser of the draft becomes the bank's money. The transaction is that of purchase and sale. No trust relationship is established." (*Legniti* v. *Mechanics & Metals National Bank,* 230 N. Y. 415, 16 A. L. R. 185, 130 N. E. 597.) To the same effect: *Harrison* v. *Wright,* 100 Ind. 515, 50 Am. Rep. 805; *Grammel* v. *Conner,* 55 Mich. 201, 54 Am. Rep. 363, 21 N. W. 418; *Spiroplos* v. *Scandinavian-American Bank,* 116 Wash. 491, 16 A. L. R. 181, 199 Pac. 997.

The relation between the bank and the holder of a check **[2]** issued by it is that of debtor and creditor. (*Clark* v. *Toronto Bank,* 72 Kan. 1, 115 Am. St. Rep. 173, 2 L. R. A. (n. s.) 83, 82 Pac. 582; *Rosenthal* v. *Mastin Bank,* 17 Blatchf. 318, Fed. Cas. No. 12,063.)

But it is urged by counsel for plaintiff that the money in the hands of Palmer, as referee, was *in custodia legis.* For **[3, 4]** the purposes of this decision it may be conceded that it was. The money was a trust fund in the hands of the referee, but was it such in the possession of the bank? The fact alone that it was *in custodia legis* and that it was received by the bank does not suffice to charge the bank as a trustee of the fund. Money in the hands of a sheriff, collected pursuant to a writ of attachment or writ of execution, while in the hands of the sheriff is *in custodia legis,* but if the sheriff were to deposit the money in a bank in his private account, the bank, having no notice of the trust character of the funds, and having intermingled the money received from him with the funds of the bank, clearly would not be a trustee of the money so received. (*Raban* v. *Cascade Bank,* 33 Mont. 413, 84 Pac. 72.) So with the money deposited by the referee for which he received a cashier's check, the bank having no notice of the character of the funds.

"The mere fact that the deposit is of a trust fund, and known to the bank to be such, will not of itself make the bank a trustee of the funds for the benefit of the cestui que trust, so as to give him a preference over other creditors. In order to have that effect, there must be something in the circumstances of the deposit to constitute a special, as contradistinguished from a general, deposit, into which two classes all deposits in commercial banks may be divided. If the deposit belongs to the former class the fiduciary relation might well arise, if the latter, in the absence of mala fides it could not do so, for by a general deposit in good faith the title to the fund deposited passed. The bank became the owner thereof. The relation of debtor and creditor, and not that of trustee and cestui que trust, was created. In other words by a general deposit of the trust fund, whereby no misappropriation is intended or accomplished, the owner of the fund becomes a creditor of the bank and stands upon precisely the same footing as the other general creditors in the bank who are creditors thereof, and who is entitled to no preference over them." (Michie, Banks & Banking, 611.)

Trusts under our statute are either voluntary or involuntary. A voluntary trust is an obligation arising out of a personal confidence reposed in and voluntarily accepted by, one for the benefit of another. (Sec. 7879, Rev. Codes 1921.) An involuntary trust is one that is created by operation of law. (Id., sec. 7880.) It is clear that if a trust were to be declared here it would be an involuntary trust. One who wrongfully detains a thing is an involuntary trustee thereof for the benefit of the other. (Id., sec. 7886.) One who gains a thing by fraud, accident, mistake, undue influence or violation of a trust or other wrongful act, is, unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it. (Id., sec. 7887.)

Surely there is no act appearing in this record which would bring the Commercial National Bank within the definition of

an involuntary trustee.  Those who deal with a trustee concerning the subject of the trust, with knowledge of the trust, are bound by the terms of the trust, but it is not so with those who deal with a trustee, in good faith, ignorant of the fact that he is a trustee, or that a trust exists. ' (26 R. C. L. 1237, 1238.)

In the present case the referee having in his possession **[5]** money *in custodia legis,* but without apprising the bank concerning that fact, giving the bank no information whatsoever respecting the source of the money or its character, passed money over the counter and purchased a check for the amount thereof, less exchange, for his personal convenience.  The bank came into possession of the money in good faith and in the ordinary course of business.  It did not gain the money by fraud, accident, mistake, undue influence, the violation of a trust, or by any wrongful act.  The referee merely purchased the credit of the bank and by that transaction became the bank's creditor; the bank was his debtor.  When the bank received the money without notice of its character, the money became the bank's property without being impressed with any trust in favor of the plaintiff.  There was nothing in the transaction to establish or create a trust relationship between them.

*Bramwell* v. *United States F. & G. Co.,* 299 Fed. 705, affirmed in 269 U. S. 483, 67 L. Ed. 368, 46 Sup. Ct. Rep. 176, is relied upon by counsel for plaintiff but has no application here.  That was a case wherein money on deposit with a bank stood in the name of an Indian agent who held it for the use and benefit of the Indians as their property.  The bank, with the United States Fidelity & Guaranty Company as surety, executed to the United States a bond to secure the payment of the deposit.  The United States was guardian for the Indians and the court held that the deposit represented a debt due the United States which the surety company had recognized in executing the bond.

*United States* v. *Brock,* 5 Fed. (2d) 265, and *United States* v. *Adams,* 9 Fed. (2d) 624, also relate to debts due the United

States. The money in the possession of the referee in this case was not a debt due the United States. It was the property of the bankrupt estate, to be distributed in due course to the bankrupt's creditors (less administrative expenses).

The action of the receiver in approving it as a general claim was correct, and the court erred in declaring it entitled to preference.

It follows that the judgment of the trial court must be reversed, with direction to dismiss the action, and it is so ordered.

*Reversed, with direction to dismiss.*

Associate Justices Myers. Stark, Matthews and Galen concur.