ADVANCE-RUMLEY THRESHER CO., INC., APPELLANT, v. HESS ET AL., RESPONDENTS.

(No. 6,468.)

(Submitted April 11, 1929. Decided June 20, 1929.)

[279 Pac. 236.]

*Mr. M. J. Lamb,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Belden & DeKalb,* for Respondents, submitted a brief; *Mr. O. W. Belden* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

On motion for rehearing the opinion heretofore rendered in this action is withdrawn and the following opinion adhering to the same conclusion is substituted therefor.

This action was brought on three promissory notes and to foreclose a chattel mortgage given to secure their payment. The notes were made August 16, 1922. Two of them matured October 1, 1923, and the other October 1, 1924.

Defendants by answer admit the execution of the notes and mortgage, and allege that the two notes payable October 1, 1923, were paid, and that a tender was made by them of the amount due on the one maturing October 1, 1924, on condition that plaintiff release the chattel mortgage. By way of affirmative defense, defendants ask for damages in the sum of $100 under section 8271, Revised Codes of 1921, and $500 general damages for failure of plaintiff to satisfy and discharge the chattel mortgage within the time provided in that section.

The affirmative allegations of the answer were put in issue by the reply. Trial by jury was waived and the cause tried to the court. Judgment was rendered for defendants in the sum of $500, from which plaintiff appealed.

The court found that the two notes maturing on October 1, 1923, were paid and discharged, and that the note payable October 1, 1924, was discharged by the tender made by the defendants. The correctness of these findings is challenged by plaintiff for want of supporting evidence.

The evidence in support of the finding that the two notes payable October 1, 1923, had been paid was as follows: A letter was written by plaintiff at Billings and mailed to defendant Cecil L. Hess, at Denton, on September 18, 1923, as follows:

"Your notes in favor of our company which mature October 1, 1923, are being held at this office for collection. The principal with interest figured to due date amounts to $463.25. If you will kindly mail us draft for the above amount, we will stamp your note paid and return it to you by mail promptly. We ask you to give this matter your good attention.

"Yours truly,
"ADVANCE-RUMELY THRESHER COMPANY, INC.
"GLENN SMITHSON, Branch Manager."

In the latter part of October, 1923, defendants secured a cashier's check from the Denton State Bank, payable to the order of the Advance-Rumley Thresher Company, and mailed it to the company at Billings, stating in the letter of trans-

mittal: "Enclosed you will find draft as requested." The cashier's check was received by plaintiff at its office in Billings on October 29, 1923; it stamped the two notes "Paid," and mailed them to defendants at Denton. The cashier's check was deposited at the Midland National Bank at Billings for collection on the day of its receipt, but was not paid because the Denton State Bank closed on October 30, 1923.

In the absence of an agreement to the contrary, the acceptance of a check in satisfaction of an obligation is conditional upon its payment. (*Kalman* v. *Treasure County,* 84 Mont. 285, 275 Pac. 743, and cases therein cited.)

Defendants contend that the foregoing evidence discloses an express agreement unconditionally to accept the check in satisfaction and discharge of the notes.

Plaintiff contends, first, that the mailing of a cashier's check instead of a draft was not a compliance with the request contained in the letter of September 18, 1923, assuming, for the sake of argument, that compliance therewith would have operated as actual payment of the notes.

We think, for the purposes of this case, the term "draft" and "cashier's check," may be regarded as meaning the same thing. (*Montana-Wyoming Assn. of Credit Men* v. *Commercial Nat. Bank of Miles City,* 80 Mont. 174, 259 Pac. 1060.)

Plaintiff's next contention is that, treating the cashier's check as a draft, the evidence falls short of showing an agreement that it was accepted as unconditional payment of the notes. The fact that the notes were marked "Paid" and surrendered to the makers does not establish that the draft was accepted as unconditional payment of the notes. (22 Am. & Eng. Ency. of Law, 2d ed., 564; *Lloyd Mortgage Co.* v. *Davis,* 51 N. D. 336, 36 A. L. R. 465, 199 N. W. 869; *Little* v. *Mangum* (C. C. A.), 17 Fed. (2d) 44; *Cleve* v. *Craven Chemical Co.* (C. C. A.), 18 Fed. (2d) 711, 52 A. L. R. 980.)

A case very similar is that of *National Life Insurance Co.* v. *Globe,* 51 Neb. 5, 70 N. W. 503. In that case the creditor wrote the following letter to the debtor: "The premium of $111 on your life insurance policy No. 42,899 will fall due July 1, 1891. Kindly give this notice prompt attention, as your in-

surance, if not paid, expires on that date. Please remit by bank draft, registered letter, express or post-office money order to M. L. Roeder & Bro., 403 Paxton Block, Omaha, Neb.'' The debtor secured and mailed the draft as requested. The draft was received and deposited in a bank for collection on the day of its receipt and was unpaid because the bank that drew the draft closed the next day. On receipt of the draft the creditor forwarded to the debtor a renewal receipt, ''by which the payment of the premium was in terms acknowledged.'' After stating the general rule that the acceptance of a draft is conditional payment of an obligation only, the court said: ''We will next give our attention to the notice sent by the agents to defendant in error, by which they informed him of the approaching maturity of the insurance premium, and requested that a remittance be made, such request being in terms as follows: 'Please remit by bank draft, registered letter, express or post-office money order. * * * ' It has been argued that this amounted to a direction relative to the manner of the remittance, a compliance with which on the part of defendant in error, as to the manner or medium of remittance therein indicated, constituted the remittance a payment of the premium, regardless of the ultimate outcome, or whether the agents or company, as a result of such action of defendant in error, subsequently received the money or not. The statement quoted from the notice amounted to a request at most, and was not binding upon the defendant in error. It might have been wholly disregarded, but compliance with it, in any one of the ways or means suggested for the transmission of the amount necessary to meet the payment soon to be due, was sufficient to entitle the defendant in error to claim such rights as thereby arose in his favor, under the rules of business and law applicable thereto, but none other or further. He chose to remit by draft purchased at any bank of his own selection, to be drawn payable by any bank, and at any place he chose to designate, and thereby placed the transaction and his rights thereunder within the rule that it was not a payment of the premium until the draft was received, presented, and honored.'' This language from the Nebraska court was quoted

with approval by the supreme court of Michigan in the case of *Baumgardner* v. *Henry*, 131 Mich. 240, 91 N. W. 169.

Another case possessing similar features is that of *Dille* v. *White*, 132 Iowa, 327, 10 L. R. A. (n. s.) 510, 109 N. W. 909. In that case the plaintiff desired to borrow $4,400 from defendant. Defendant agreed to make the loan, repayment to be secured by a real estate mortgage, which was given by plaintiff to defendant. Defendant asked plaintiff whether he would take the amount of the loan "in check or draft." Defendant's testimony on that point was that the words "money, check or draft," were the words used in the question. Plaintiff replied in substance that he would take two drafts, one for $1,000 and the other for $3,400. Drafts were requested from the bank, but by mistake cashier's checks were issued instead. When plaintiff learned that cashier's checks were delivered to him instead of drafts he returned to the bank, surrendered the checks, which were then marked "paid and canceled," and received drafts instead. It was held by the majority opinion that the drafts were conditional payment only and that plaintiff was entitled to the surrender of his note and mortgage, the court saying: "He took the checks as countless thousands of people in the world of business are taking them every day, not as money, and not as absolute payment, but as an assurance that, upon making due demand at the place of deposit, payment would then and there be consummated."

This court held in *Kalman* v. *Treasure County*, supra, that the following letter: "We acknowledge receipt of your remittance under date of December 31, in the amount of $1,952.50 in payment of interest on Treasure county bonds," was not sufficient to show that the check was accepted as unconditional payment. The letter here relied upon as proving an offer to accept a draft as unconditional payment is not open to that construction. It is nothing more than a request for a draft and a promise to do that which is wholly consistent with its acceptance as conditional payment only, viz., stamp the notes "Paid" and return them to the makers. The letter was simply a direction as to the method of handling the transaction.

The agent of plaintiff who handled this transaction testified that he had no intention to accept the check as absolute and unconditional payment of the notes.

Contention is made that, since plaintiff has retained the draft ever since receiving it, the implication follows that plaintiff accepted it as absolute payment. But plaintiff took no affirmative action to collect the draft, other than to have it presented for payment. It made no claim against the receiver of the bank, but, on the contrary, immediately upon learning of the suspension of the Denton bank, advised the defendants of that fact. Mere retention of the draft or failure to surrender it is not sufficient from which the deduction can be made that it was taken as unconditional payment of the notes. There is no evidence in this case that defendants ever asked the return of the draft. There is no evidence to support the finding that the notes maturing on October 1, 1923, were paid and discharged.

The finding that the note maturing on October 1, 1924, was discharged and paid is based upon a tender made by defendants by depositing the amount due on the note in the First National Bank of Denton, to be paid to plaintiff on condition that plaintiff deliver the note and mortgage, together with a satisfaction in full of the mortgage. It is contended that the obligation was thus discharged by virtue of section 7446, Revised Codes of 1921.

The mortgage involved was given to secure the three notes, and, since the two maturing on October 1, 1923, had not been paid, the defendants, upon the tender made, were not entitled to a satisfaction of the mortgage. A tender is not valid when accompanied with conditions which the tenderer has no right to make. (38 Cyc. 152.) In order that a tender shall operate to extinguish the obligation under section 7446, it must be for the full amount of the debt. (24 Cal. Jur. 525.) Here the tender was only for the full amount due on the one note and upon condition that the mortgage given to secure payment of the three notes was satisfied. It was error to find that the

note maturing on October 1, 1924, was discharged by the tender made.

Since the judgment awarding to defendants $500 damages was predicated upon the mistaken premise that the notes were paid and the defendants entitled to a satisfaction of the mortgage, it cannot stand.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.