511 P.2d 769

**Donald K. ALLISON, Plaintiff-Appellee, Cross-Appellant,**

**v.**

**FIRST NATIONAL BANK IN ALBUQUERQUE, Defendant-Appellant, Cross-Appellee.**

**No. 1110.**

Court of Appeals of New Mexico.

June 6, 1973.

Certiorari Granted July 9, 1973.

284

Robert M. St. John, Rex D. Throckmorton, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for appellant.

Dale Walker, Peter Gallagher, Gallagher & Walker, Albuquerque for appellee.

## OPINION

SUTIN, Judge.

The defendant appeals from a judgment and plaintiff cross-appeals.

The sole question on defendant's appeal is: When does the period of limitation begin to run on a cashier's check? If a cause of action does not accrue against a bank until demand for payment is made, then the defendant's action is within

the period of limitation since the demand did not occur until 1968 and suit was filed in 1970. On the other hand, if a cause of action accrues immediately upon issuance of the cashier's check or within a reasonable period of time after issue, then the period of limitation under §§ 23–1–1 and 23–1–3, N.M.S.A.1953 (Vol. 5) has expired and the plaintiff's action is barred.

The trial court concluded as a matter of law that plaintiff's claim was not barred by the statute of limitations and defendant appeals. We affirm.

The plaintiff cross-appeals for failure of the trial judge to award actual and consequential damages as a result of defendant's wrongful dishonor of plaintiff's cashier's checks. We reverse.

A. *The statute of limitations did not run.*

2 Anderson, Uniform Commercial Code, 2nd Ed., p. 612, § 3–104:18 (1971) defines a cashier's check:

> A cashier's check is a *draft* drawn by the bank upon itself which is accepted by the act of issuance. * * * A cashier's check is a primary obligation of the bank, * * * and is an obligation to pay which ordinarily cannot be countermanded. It is issued by an authorized officer of a bank, directed to another person, evidencing the fact that the payee is authorized to demand and receive from the bank, upon presentation, the amount of money represented by the check. * * * [Emphasis added]

10 Am.Jur.2d, Banks, § 544 says:

> A cashier's check is a *bill of exchange,* drawn by the bank upon itself, and is accepted by the act of issuance. * * * [Emphasis added]

■ There is no legal difference in the meaning of the terms "draft" and "cashier's check." Montana-Wyoming Assn. v. Commercial Bk., 80 Mont. 174, 259 P. 1060 (1927); Advance-Rumley Thresher Co., Inc., v. Hess, 85 Mont. 293, 279 P. 236, 237 (1929); The People v. Miller, 278 Ill. 490, 116 N.E. 131, L.R.A.1917E 797 (1917);

Cochrane, as Liqdr. v. F.E.C. Ry. Co., 107 Fla. 431, 145 So. 217 (1932).

■ In legal effect, as between the bank and payee, a cashier's check is the same as a *certificate of deposit* or a certified check. Walker v. Sellers, 201 Ala. 189, 77 So. 715 (1918); Middlekauff v. State Banking Board, 111 Tex. 561, 242 S.W. 442 (1922); Clark v. Chicago Title & Trust Co., 186 Ill. 440, 57 N.E. 1061, 53 L.R.A. 232, 78 Am.St.Rep. 294 (1900).

Bank of America v. Cranston, 252 Cal. App.2d 208, 217, 60 Cal.Rptr. 336, 342 (1967) followed Walker v. Sellers, supra, and then stated:

> The substance of a certificate of deposit and of bank drafts, cashier's checks, certified checks and money orders thus appears to be the same. Each is issued in consideration of the placing, or transfer or deposit of money or credit, in or to a bank. Each is a negotiable instrument pledging the credit of the bank to the holder. And in each case the relationship of debtor and creditor arises between the holder and the bank.

We emphasize the nexus between "cashier's checks" and "drafts," "bills of exchange," and "certificates of deposit." Drafts, bills of exchange and certificates of deposit are covered by the Uniform Commercial Code. One of the purposes of this code is " * * * to simplify, clarify and modernize the law governing commercial transactions; * * * " Section 50A–1–102(2)(a), N.M.S.A.1953 (Repl.Vol. 8, pt. 1).

Section 50A–3–104(2)(a), (c), N.M.S.A. 1953 (Repl.Vol. 8, pt. 1) pertains to form of negotiable instruments, such as "draft" and "certificate of deposit."

Section (2)(a) and (c) read:

> (2) A writing which complies with the requirements of this section is
>
> (a) a "draft" ("bill of exchange") if it is an order;
>
> * * * * * *
>
> (c) a "certificate of deposit" if it is an acknowledgment by a bank of re-

ceipt of money with an engagement to repay it;

Section 50A–3–122(2) and (3) pertain to the accrual of a cause of action for (1) a demand "certificate of deposit" and (2) "draft." The cause of action accrues (1) upon demand and (2) a demand following dishonor of the instrument. We have found no judicial interpretation of this section. But it is apparent that this section has hammered out an exception to the general rule that a cause of action on a demand "instrument" accrues at the time of its issuance.

We hold that a "cashier's check" falls within the category of a "draft" ("bill of exchange") and a "certificate of deposit." It has long been the rule in New Mexico that the statute of limitations does not begin to run against a certificate of deposit until presentation and demand of payment. Bank of Commerce v. Harrison, 11 N.M. 50, 66 P. 460 (1901).

The only case to the contrary is Dean v. Iowa-Des Moines Bank, 227 Iowa 1239, 281 N.W. 714, 720 (1938), modified on other grounds, 227 Iowa 1239, 1247, 290 N.W. 664, 128 A.L.R. 137 (1940). The court looked upon the cashier's check as a bill of exchange; and " * * * At all times after the issuance defendant owed the debt, and there was a duty to pay. So far as the statute of limitations is concerned a cause of action had accrued. * * *" We believe the court would have held to the contrary under the Uniform Commercial Code.

National banks are instrumentalities of the federal government, created for a public purpose. We have no knowledge from this record or from any source that a national bank throughout its corporate existence asserted the statute of limitations against a tardily presented cashier's check on the theory that it was a demand instrument, the cause of action of which accrued at the time of issuance and therefore covered by the six year, or any, statute of limitations. This may be declared to be a usage or custom in national banks for the protection of the public and not subject to the statute of limitations.

National banks must know " * * * that cashier's checks ordinarily pass current as money in everyday business transactions. * * *" First Nat'l Bank v. Noble et al., 179 Or. 26, 38, 168 P.2d 354, 359, 169 A.L.R. 1426 (1946); see also Causey v. Eiland 175 Ark. 929, 1 S.W.2d 1008, 56 A.L.R. 529 (1928); Nat. Newark & Essex Bank v. Giordano, 111 N.J.Super. 347, 268 A.2d 327, 329 (1970). "Money" is a synonym for "cashier's check." Public policy and good faith should remove "cashier's checks" from accrual of a cause of action at the time of issuance because they are accepted on the faith and credit of the bank issuing them. Kohler v. First National Bank, 157 Wash. 417, 289 P. 47, 50 (1930). .

Finally, where a person purchases cashier's checks to be preserved as money and as a means of avoiding possession of currency, it is a cash transaction. The assets of the bank are increased to the amount of the cashier's checks, and the relation of trustee rather than that of debtor and creditor is created between the parties. Cochrane, as Liqdr. v. F.E.C. Ry. Co., supra.

▮ Where a fiduciary relationship exists, the statute of limitations is not applicable. Bank of America v. Cranston, supra.

▮▮ A national bank is the guarantor of payment of its cashier's checks. It should not be allowed to avoid payment by use of a technical defense such as the statute of limitations.

We affirm the judgment for plaintiff.

B. *Plaintiff was entitled to damages for defendant's wrongful dishonor of plaintiff's checks.*

The trial court made the following findings of fact:

6. That on September 30, 1968, defendant bank refused to honor the above numbered cashier's checks.

7. That defendant's dishonor of said checks was *wrongful* in that the checks had not been paid and were not void. [Emphasis added]

8. The plaintiff has not shown any consequential loss or damage resulting to him by reason of the refusal of First National Bank in Albuquerque to pay in 1968 the cashier's checks issued to him in March, 1953, and is entitled to actual damages of $5,000.00.

Section 50A–4–402, N.M.S.A.1953 (Repl.Vol. 8 pt. 1) is entitled "Bank's liability to customer for wrongful dishonor".

*A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item.* When the dishonor occurs through mistake liability is limited to actual damages proved. *If so proximately caused and proved damages may include* damages for an arrest or prosecution of the customer or other *consequential damages.* Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case. [Emphasis added]

"Wrongful dishonor" has not been defined by the Code. Official comment states that the above " * * * section does not attempt to specify a theory. * * *" It is different from "'* * * failure to exercise ordinary care in handling an item * * *'" It "* * * excludes any permitted or justified dishonor. * * *" Uniform Commercial Code, § 4–402, Comments 2, 3 and 4.

■ "Wrongful dishonor" means a dishonor done in a wrong manner, unjustly, unfair, in a manner contrary to justice. See "Wrongful" 46 Words and Phrases, p. 488. It excludes negligence or permitted or justified dishonor.

"Mistaken dishonor" means a dishonor done erroneously, unintentionally, a state of mind that is not in accord with the facts. See "Mistake" 27 Words and Phrases, p. 568.

This section does not deal with "intentional or wilful or malicious dishonor."

This type of dishonor permits an award of punitive damages. In fact, we have also held that a bank " * * * wrongfully dishonored the checks through mistake." Loucks v. Albuquerque National Bank, 76 N.M. 735, 745, 418 P.2d 191, 198 (1966).

■ In the instant case, on three separate occasions, from September 30, 1968 through January 6, 1969, the defendant dishonored the checks (1) by informing a Mexico bank that the checks were not outstanding; (2) that the checks had been paid by reissuance of new cashier's checks and requested the cashier's checks held by plaintiff be returned for cancellation; (3) again returning the checks unpaid. The bank failed to prove the reasons for its dishonor. This dishonor was not permitted or justified. This certainly created at least an issue for the trial court to decide. The trial court correctly found the dishonor was wrongful.

■ "Consequential damages" are not defined in terms in the Uniform Commercial Code, but are used in the sense given them by the leading cases on the subject. 1 Anderson, Uniform Commercial Code, 2nd Ed., p. 48.

In 3 Anderson, Uniform Commercial Code, 2nd Ed., p. 306, the author makes this comment with reference to § 50A–4–402:

Damages for Wrongful Dishonor. A payor bank is liable to its customer for the damages proximately caused by the wrongful dishonor of an item. The damages may include consequential damages (such as those sustained in connection with an arrest and prosecution), provided they are proximate damages. Whether the consequential damages are proximately related to the wrongful dishonor is a question of fact and not of law.

" 'Consequential damage' is defined in Black's Law Dictionary, Third Edition, as: 'Such damage, loss or injury as does not flow directly and immediately from the act of the party, but only from the consequences or results of such act.' " Food

Corporation v. Dawley, 202 Va. 543, 546, 118 S.E.2d 664, 667 (1961). "Consequential damage" includes injuries to credit as a result of wrongful dishonor. *Loucks* supra. It includes " * * * *any* * * * consequential harm, loss or injury proximately caused by a wrongful dishonor. * * *" A.F.N.B. v. Flick, 146 Ind.App. 122, 132, 252 N.E.2d 839, 845 (1969). See also, Skov v. Chase Manhattan Bank, 407 F.2d 1318 (3rd Cir. 1969); "Consequential Damages", 8A Words and Phrases, p. 222. For dishonor due to mistake, see Bank of Louisville Royal v. Sims, 435 S.W.2d 57 (Ky.1968).

■■■■ As a consequence of the dishonor (1) An attachment lien was filed against 54 items of personalty of the plaintiff in Mexico seizing all his personal assets for purposes of satisfying his debts owed to the Mexican bank. (2) Plaintiff was personally threatened with imprisonment if the checks were invalid. (3) His credit standing was ruined. (4) He was placed under a cloud of suspicion in his Mexican community. Plaintiff had an excellent professional reputation.

Plaintiff is entitled to reasonable and temperate damages determined by the sound discretion and dispassionate judgment of the trial court. *Loucks,* supra.

Plaintiff's judgment is affirmed. Plaintiff's cross-appeal is sustained. This cause is remanded to the trial court solely to determine the amount of consequential damages plaintiff is entitled to.

It is so ordered.

LOPEZ, J., concurs.

WOOD, J., dissents.

WOOD, Chief Judge (dissenting).

I do not agree with the reasoning of the majority in deciding the statute of limitations issue. Nor do I agree with the result reached. I would reverse the trial court on the basis that the statute of limitations had run.

A. *Disagreement with the majority opinion.*

The majority premise is that there is no difference between a draft, a cashier's check, a certificate of deposit or a certified check. Such a view is too broad because it fails to consider the issue requiring a comparison of those documents and fails to consider statutory provisions which deal with those documents. To say that each document is a negotiable instrument and that each document evidences a debtor-creditor relationship is no more than a beginning point.

In holding that the statute of limitations had not run in this case, the majority rely largely on decisions that do not involve the question of when the statute of limitations begins to run.

The majority do not make it clear whether their decision is based on the provisions of the UCC (Uniform Commercial Code). If the UCC is a basis for the majority opinion, the UCC is erroneously applied. Further, the UCC is not applicable to this case.

Finally, the majority state a national bank ". . . should not be allowed to avoid payment by use of a technical defense such as the statute of limitations." There is nothing in § 23–1–3, N.M.S.A. 1953 which makes that statute unavailable to the defendant. Statutes of limitations embody a legislative policy of forbidding stale claims. Burnett v. New York Cent. R. Co., 380 U.S. 424, 13 L.Ed.2d 941, 85 S. Ct. 1050 (1965). The Judges of this Court, under oath to uphold the law, have no authority to deny applicability of a statute to a national bank when the legislative enactment does not exclude the bank from its provisions.

B. *The limitation period had run under the UCC.*

The limitation period involved is the six year period provided by § 23–1–1, supra. This period begins to run from the accrual of the causes stated in § 23–1–3, supra. See § 23–1–1, N.M.S.A. 1953.

No time for payment is stated in the five cashier's checks involved. They were payable on demand. Section 50A-3-108, N. M.S.A. 1953 (Repl. Vol. 8, pt. 1).

A cashier's check is frequently defined in terms of a bill of exchange. A cashier's check has also been referred to as analagous to a negotiable note payable on demand. See State of Pa. v. Curtiss Nat. Bank of Miami Springs, Fla., 427 F.2d 395 (5th Cir. 1970); Walker v. Sellers, 201 Ala. 189, 77 So. 715 (1918); 2 Anderson, Uniform Commercial Code § 3-104:18 (2d Ed. 1971). Defendant issued the cashier's checks; thus, it is either an acceptor or maker of the cashier's checks.

Section 50A-3-122, N.M.S.A. 1953 (Repl. Vol. 8, pt. 1) provides a cause of action against a maker or acceptor of a demand instrument accrues ". . . upon its date or, if no date is stated, on the date of issue." The date of issue was March 7, 1953; demand for payment was in 1968. Under the UCC the limitation period of § 23-1-3, supra, had run.

2 Anderson, supra, § 3-122:5(2) states: "The statute of limitations as to an action against a certifying bank or bank issuing a cashier's check runs from the date of the check, or if undated, from the date of issue, rather than from the making of a demand for payment." Under the UCC, special rules apply to certificates of deposit. See 2 Anderson, supra, § 3-122:5(3) and § 3-122:7; I Hawkland, A Transactional Guide to the Uniform Commercial Code § 2.050102 (1964).

## C. *The UCC is not applicable.*

The UCC was enacted in New Mexico in 1961 and became effective at the end of 1961. Laws 1961, ch. 96, § 10-101. Laws 1961, ch. 96, § 10-102(2) provides that transactions validly entered into before the effective date, " * * * and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as * * * permitted by any statute * * * appealed by this Act as though such repeal * * * had not occurred." New Mexico's

NIL (Negotiable Instruments Law) was repealed by Laws 1961, ch. 96, § 10-102(1). Thus, the applicable statute is the NIL, and not the UCC.

## D. *The NIL.*

The NIL does not expressly refer to cashier's checks. Sections 50-1-1 to 50-5-7, N.M.S.A. (Orig. Vol. 8). The NIL does refer to bills of exchange (§ 50-3-1, supra), and promissory notes (§ 50-4-1, supra). Certified checks are referred to in terms applicable to bills of exchange. See §§ 50-4-4 and 50-4-5, supra. Section 50-1-17(V), supra states: "Where the instrument is so ambiguous that there is doubt whether it is a bill or note, the holder may treat it as either at his election. * * *"

Since a cashier's check has been defined as a bill of exchange, but also considered analogous to a promissory note, I would consider that plaintiff had an election under § 50-1-17(V), supra. There being nothing indicating such an election, I consider the cashier's checks under both categories—as bills of exchange and as promissory notes.

In doing so, it should be kept in mind that the cashier's checks were also demand instruments under the NIL. Section 50-1-7, supra. It should also be kept in mind that defendant was primarily liable on the cashier's checks it issued. Perry v. West, 110 N.H. 351, 266 A.2d 849 (1970); 2 Anderson, supra, § 3-104:18.

In Dean v. Iowa-Des Moines Nat. Bank & Trust Co., 227 Iowa 1239, 281 N.W. 714 (1938) modified on other grounds, 227 Iowa 1239, 290 N.W. 664 (1940), a cashier's check was treated as a bill of exchange. *Dean* held that defendant was primarily liable; that the liability was created "from and after issuance;" that at all times after issuance there was a duty to pay. "So far as the statute of limitations is concerned a cause of action had accrued." Atlantic Nat. Bank of West Palm Beach v. Havens, 45 So.2d 342 (Fla.1950), holds that the statute of limitations on cashier's checks begins to run on the date of issue. Under these decisions, a cause of

action on cashier's checks treated as bills of exchange accrued when the checks were issued in 1953.

Schoonover v. Caudill, 65 N.M. 335, 337 P.2d 402 (1959) states:

". . . the statute of limitations begins to run against the ordinary demand note from the date of its execution, rather than from the time of demand . . . ."

Under *Schoonover*, if treated as promissory notes, a cause of action accrued on the cashier's checks when issued in 1953.

Under either theory permitted by § 50-1-17(V), supra, the statute of limitations had run.

2 Anderson, supra, § 3-122:1, refers to the "Official Code Comment" concerning what is our § 50A-3-122, supra. This comment is that the statutory provision for accrual of causes of action is new. This new provision, however, " * * * follows the generally accepted rule that actions may be brought on a demand note immediately upon issue, without demand, since presentment is not required to charge the maker under the original Act [the NIL] or under this Article. * * *"

*Hawkland,* supra, states:

"Since presentment is not necessary to charge persons who are primarily liable on negotiable instruments, the statute of limitations starts to run in favor of the maker of a promissory note and the acceptor of a draft or check the moment these instruments mature. In the case of a demand instrument, the statute of limitations starts to run at the moment the paper is issued, because no demand for payment is needed to charge primary parties.

*"These basic rules have been continued by* . . . ." § 50A-3-122, supra. [My emphasis].

The above texts are to the effect that the UCC provisions for accrual of causes of action are, generally speaking, no more than a continuation of basic or general rules applicable under the NIL.

On the basis of the above cited cases and texts, I would hold the statute of limitations began to run on the cashier's checks on the date of issue.

E. *Cashier's checks as certificates of deposit.*

I have previously pointed out that a special rule applies to certificates of deposit under the UCC. New Mexico adopted a special rule for certificates of deposit in 1901. Bank of Commerce v. Harrison, 11 N.M. 50, 66 P. 460 (1901) held the statute of limitations does not begin to run on a certificate of deposit until there has been a presentment and demand for payment. See also Luna v. Montoya, 25 N.M. 430, 184 P. 533 (1919).

Plaintiff would apply the rule for a certificate of deposit to a cashier's check. This contention is based on the similarity of the instruments. A cashier's check is similar to a promissory note; a certificate of deposit is similar to a promissory note; thus, a cashier's check and a certificate of deposit are similar. See 2 Anderson, supra, §§ 3-104:18 and 3-104:25.

My answer to this contention is: (1) Bank of Commerce v. Harrison, supra, adopted the special rule for certificates of deposit on the basis that the certificates were similar to deposits of money. *Harrison,* supra, did not involve and did not consider, cashier's checks. (2) A special rule is applied to certificates of deposit because they are " * * * regarded by most depositors as a mere receipt or a savings-account passbook. * * *" *Hawkland,* supra. (3) The record in this case does not establish that cashier's checks are considered similar to deposits; plaintiff did not so testify and there is no evidence as to customary usage as to cashier's checks. 2 Anderson, supra, § 3-104:18 states cashier's checks are " * * * frequently taken out by parties who desire to have the money represented by the check in that form rather than to carry cash. * * *" Further, the bank's obligation " * * * is like that of the maker of a demand promissory note." 2 Anderson, supra, § 3-104:18. Thus, there

is no basis for equating the purpose of a cashier's check with the purpose of a certificate of deposit.

On the basis of the foregoing, I dissent.