ANTONIO IAFOLLA and Others, Respondents, *v.* M. BERARDINI STATE BANK and Another, Appellants.

First Department, December 7, 1934.

*John A. Mullen* of counsel [*Benjamin Levin* with him on the brief; *John A. Mullen,* attorney], for the appellants.

*Andrew S. Fraser* of counsel [*Harry M. Alfert* with him on the brief; *Andrew S. Fraser,* attorney], for the respondents.

TOWNLEY, J.   This action is brought to impress a trust on a part of defendants' funds.

Prior to the closing of the M. Berardini State Bank by the Superintendent of Banks on October 31, 1931, the various plaintiffs in this case as clients or customers of the bank had transactions involving requests or directions to the bank to deposit stated sums of Italian lire to their respective accounts in the Postal Savings Bank in the Kingdom of Italy at Rome.   It is conceded that whenever these transactions occurred, the plaintiffs delivered to M. Berardini State Bank dollars equivalent to the number of lire which they desired to have deposited in Italy and paid in addition a small charge for the service.   The money that was paid for the lire was paid in cash or by check or by withdrawal from savings accounts maintained by the plaintiffs with the bank.   For the purposes of this appeal we think it immaterial in what manner the dollar payments were made to the bank for the establishment of lira credits in Italy.

On each occasion the plaintiffs received a receipt from the M. Berardini State Bank which contained identical printed matter. An example of this exhibit as translated reads as follows: " Service of the Postal Savings Bank of the Kingdom of Italy.   #35918. M. Berardini State Bank, 34 Mulberry Street, New York.   40,000 lire — deposited in favor of Olimpio Iacchetta   *   *   *.   M. Berardini State Bank."   Each receipt bore at the bottom also, " The foregoing valuta has been insured against all risk including all those arising from Act of God."   The daily cash sheet on the date of each of the transactions included an entry on the incoming side of each sheet of a sum of dollars representing the sum of money paid by the plaintiff together with its equivalent in lire.   Such entries are frequently for groups of similar transactions and the items entitled " Vaglia Roma " are inclusive of plaintiffs' and other similar transactions.

It is admitted that the defendant bank never made the deposit in the Italian Postal Savings Bank but sent instructions by mai. to its Naples correspondent, Banca M. Berardini, to make such deposits and to charge the M. Berardini State Bank thereforl

This was not done. When the Superintendent of Banks took charge of the bank, he countermanded the instructions in so far as at least five of the plaintiffs are concerned. At this time the Superintendent of Banks took the position that the Naples bank had no lien on further payments with regard to unpaid drafts and money orders. It is conceded that the assets of the defendant bank in the possession of the Superintendent of Banks are more than sufficient to pay in full the claims of these plaintiffs and all similar claims.

Before trial the defendants withdrew their rejection of plaintiffs' claims and they were added by court order to the list of the general creditors of the defendant bank. The issue, therefore, is whether they are to be deemed preferred or general creditors.

It has been established by the decisions in this State that in transactions involving the sale of credits or transferring credits abroad, the money paid the bank by the purchaser of drafts or by the contracting party to an agreement to open credits abroad, becomes the bank's money. The transaction is that of purchase and sale and no trust relationship is established. (*Legniti* v. *Mechanics & Metals National Bank*, 230 N. Y. 415; *Taussig* v. *Carnegie Trust Company*, 156 App. Div. 519; affd., 213 N. Y. 627.) It was said in *Safian* v. *Irving National Bank* (202 App. Div. 459; affd., 236 N. Y. 513) that when a plaintiff pays the money to the bank, the bank does not become a bailee which is required to send the identical money to the foreign address. " The bank could use the money for its own purposes pending performance of the agreement. The failure to perform gave rise to an action on the express contract." (See, also, *Matter of Littman*, 258 N. Y. 468.) There is no difference between cable transfers which are referred to in the cases cited and transfers of credit effected by a letter. (*Pfotenhauer* v. *Equitable Trust Co.*, 115 Misc. 396; affd., 201 App. Div. 846; *Matter of Glicksberg*, 259 N. Y. 567.)

Fully aware of these decisions, the plaintiffs claim that in this particular instance defendant is estopped to deny that the bank received lire from the plaintiffs. They base this upon the wording of the receipt. The testimony in the plaintiffs' own case, however, showing how the deposits were made, contradicts any representations made on this receipt and we fail to see any element of estoppel in the case. Plaintiffs did not change their position in reliance on the receipt. The receipt was given to them as a memorandum of the transactions which they had already completed and which they perfectly well knew did not involve the delivery by them to the defendant of a specific number of lire.

The provision in the receipt regarding insurance against all risks has no bearing on the relation of the parties concerned. If any

claim were to arise out of this provision because there was no insurance, the limit of the plaintiffs' right would be an action for breach of the provision of the contract.

The judgment should be reversed, with costs, and the complaint dismissed, with costs, and the plaintiffs should be left to their accepted claims as general creditors.

MARTIN and O'MALLEY, JJ., concur; FINCH, P. J., and GLENNON, J., dissent and vote for affirmance.

GLENNON, J. (dissenting). I am constrained to dissent from the conclusion reached by the majority of the court. The established facts in this case clearly indicate that there were no purchases of credits, but rather directions in each instance to the M. Berardini State Bank to transmit certain specific sums of money to the Postal Savings Bank of the Kingdom of Italy. (*Legniti* v. *Mechanics & Metals National Bank*, 230 N. Y. 415; *Cutler* v. *American Exchange Nat. Bank*, 113 id. 593; *People* v. *City Bank of Rochester*, 96 id. 32.)

In the *Legniti* case Judge CRANE wrote: " There is a marked distinction between these transactions which I have just described and a direction to a bank or other person to transmit a certain specific sum of money to a person abroad. In such cases the bank or transmitter is the agent of the person paying the money, and until the money is sent holds it as agent or trustee for the owner. Such were the cases of *Musco* v. *United Surety Company* (132 App. Div. 300) and *People ex rel. Zotti* v. *Flynn* (135 App. Div. 276). In these latter transactions the intention of the payer is that the money he gives to his agent shall be sent abroad. It is the amount which he gives that is to be transmitted. How it is sent may be immaterial to him. If there be time, currency might be purchased and sent. If not, it may be transmitted in any form recognized in financial circles. It is not at all necessary that the sender or agent have credit in the place to which the money is to be sent."

Here, each of the plaintiffs purchased specific sums of lire which were to be sent to the Postal Savings Bank of the Kingdom of Italy. In those instances where plaintiffs had savings accounts in the bank at the time of the respective orders, the M. Berardini State Bank converted their dollars into lire and made a service charge for so doing. It will be noted that the receipts delivered to the plaintiffs even went so far as to read: " The foregoing valuta has been insured against all risk including all those arising from Act of God." The bank, as agent, then and there accepted from these plaintiffs the lire purchased and was charged not only with the duty or trust of transmitting them to the Postal Savings Bank in Italy, but also of

keeping the amounts so received separate from its general funds. These plaintiffs did not intend to permit the bank to use the money for its own purposes, or to establish the ordinary relationship. of debtor and creditor, but rather entered into agreements with the bank that the specific number of lire in some form or other be transmitted to the Postal Savings Bank. Thus, these plaintiffs were only general creditors of the bank, while their money was in the savings accounts; but when the bank changed their dollars into lire, as was concededly done in each instance, and accepted their respective orders to transmit, it became an agent or trustee charged with a specific duty toward specific funds. With respect to those plaintiffs who deposited dollars at the time of the orders, the same general rule applies. The bank also converted their money into lire and accepted their respective orders as their agent. Their moneys never became part of the general funds of the bank.

Notations of the purchases of lire by the respective plaintiffs were made in the books of the bank. The receipts were for lire and not for dollars. The appearance and wording of the receipts showed that the bank was representing itself to be an agent of the Postal Savings Bank of Italy. As translated, they read substantially as follows:

" Service of the Postal Savings Bank of the Kingdom of Italy. #——. M. Berardini State Bank, 34 Mulberry Street, New York. — lire — deposited in favor of —————— ——————. M. Berardini State Bank."

This case does not involve ordinary commercial transactions between business men and banking institutions. It deals with the transmission of money into savings accounts in a foreign country, with a promise of a return of the savings bank books in due time, and with proper notations of deposits. How the bank intended to carry out its part of the agreements is not material. The trust funds could " be transmitted in any form recognized in financial circles." (*Legniti* v. *Mechanics & Metals National Bank, supra.*) The method pursued by the bank in sending instructions by mail to the Banca M. Berardini in Naples, an institution with which it had no connection, was not a part of any of the agreements made by these plaintiffs.

The findings of the trial court and the conclusions of law based thereon have ample support in the record.

The judgment should be affirmed, with costs.

FINCH, P. J., concurs.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.