THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* S. W. STRAUS & Co., INC., and Others, Defendants.

Supreme Court, Kings County, May 1, 1935.

*Herman Goldman* [*Herman M. Brauner* of counsel], for Rockwood
& Co.

*Nathaniel L. Goldstein* [*Edmund W. Van Voorhis* of counsel], for
the receiver.

HARRY A. GORDON, Referee.* S. W. Straus & Co., Inc., a domes-
tic corporation, was engaged in the business of underwriting and
selling to the public serial bonds, secured by real estate mortgages.
On November 15, 1917, it underwrote for Rockwood & Co. a series
of 1,035 six per cent coupon bonds, in denominations of $100, $500
and $1,000, aggregating $650,000, balance of principal payable in
ten years, with privilege of earlier payment. To secure the pay-
ment of these bonds, it made a mortgage to Simon W. Straus as
trustee. Under the terms of the mortgage Rockwood & Co. agreed
to deposit with S. W. Straus & Co., Inc., as depositary, an amount
equal to the normal income tax of four per cent, payable by the
bondholders upon the interest received under these bonds. On
March 3, 1933, a receiver was appointed of the assets of S. W.
Straus & Co., Inc. This is a claim by Rockwood & Co. against
the receiver for the unexpended balance of these income tax deposits.

Four hundred and eighty-five thousand dollars balance of prin-
cipal of the bonds was called for payment by Rockwood & Co. and
was paid, the bonds surrendered, and the mortgage discharged on
May 15, 1926.

---

* Report of referee confirmed by Mr. Justice LOCKWOOD May 17, 1935.

Commencing in 1918, and including March, 1926, Rockwood & Co. deposited with S. W. Straus & Co., Inc., an aggregate of $9,048, equal to the four per cent normal income tax on the total bond interest. S. W. Straus & Co., Inc., disbursed $3,859.09. The claimant seeks to recover the $5,188.91 balance, claiming a preference and direction that the receiver pay this claim in full upon the ground that the deposits constituted trust funds. (General Corp. Law, § 181, subd. 2.)

The claimant first filed its claim on December 26, 1933. The defenses are twofold: *First*, that Rockwood & Co. has not established its right to the unused balance of these deposits, because S. W. Straus & Co., Inc., may still be liable to the bondholders or possibly the United States government for the payment thereof, and *second*, that in any event the claim is barred by the Statute of Limitations, having accrued more than six years before the claim was asserted.

The claim has been submitted upon conceded facts. The moneys, as they were paid by Rockwood & Co. to S. W. Straus & Co., Inc., were not kept intact as a separate fund. They were commingled with the other funds of S. W. Straus & Co., Inc., and deposited in its general bank accounts. An account was opened and kept on the books of S. W. Straus & Co., Inc., showing annual deposits, disbursements and balances. The last deposit was $223.80 in March, 1926. The account was charged with $47.93 in 1926, with $5.37 in 1927, and with sixty cents in 1928. On December 31, 1929, the account was closed upon the books of S. W. Straus & Co., Inc., and the balance of $5,188.91 credited to the profit and loss account.

The trust mortgage provides that Rockwood & Co. agrees to pay the principal and interest of the bonds without deduction for income tax and " agrees to pay any such tax * * * and to reimburse and to deposit with the Trustee or S. W. Straus & Co., Incorporated, funds sufficient to reimburse the holders of such bonds for all payments which the holders of said bonds may have to make under any present or future income tax law of the United States of America (not, however, exceeding the normal tax or taxes) upon the income represented by the interest on said bonds " and semi-annually to deposit with S. W. Straus & Co., Inc., " an amount equal to the normal Federal Income Tax or Taxes on the amount of such semi-annual interest payment." When each deposit is made, the liability of Rockwood & Co. to pay income tax covered by such deposit " shall be discharged and the holders of the bonds or coupons * * * shall look for payment thereof or for reimbursement of their normal income tax payments, if any, solely to S. W.

Straus & Co., Incorporated, or to such bank as may have been designated by the Trustee, and shall cease to be entitled to any benefit under this Indenture on account of said bonds or coupons to the extent of the particular payment. And the money so deposited shall be applied by said S. W. Straus & Co., Incorporated, * * * to the payment of * * * income tax, if any, upon presentation and surrender of such bonds and coupons respectively. No such deposit shall draw interest * * *. The unused balance, if any, remaining out of each income tax reimbursement fund shall be repaid to the Company as soon as such balance is ascertained."

It is clear from the foregoing provisions that no trust relationship was created. When the deposits were made S. W. Straus & Co., Inc., became debtors to the bondholders and to Rockwood & Co. for any unexpended balance. (See *Iafolla* v. *Berardini State Bank*, 242 App. Div. 571.)

The claim is one upon simple contract. Whilst the mortgage itself was under seal, S. W. Straus & Co., Inc., was not a party thereto. Its liability arises from the acceptance of the deposits, and the assumption of the obligations attaching thereto declared in the mortgage. The twenty-year period of limitation does not apply. (Civ. Prac. Act, § 47.) The case is governed by the six-year rule. The claim cannot be converted into one for fraud, as the claimant asserts, thereby extending the statutory period to six years from the date of discovery (Civ. Prac. Act, § 48, subd. 5), upon the theory that in failing to advise Rockwood & Co. of this unused balance, S. W. Straus & Co., Inc., committed a fraud. The fraud intended by the statute relates to the transaction upon which the claim is founded. No claim is made that the deposits were induced by fraud. Aside from the question whether S. W. Straus & Co., Inc., owed a duty of disclosure to Rockwood & Co. of the latter's possible claim, such " fraud " would not convert the claim from contract into tort. Nor is the question of estoppel against a plea of the Statute of Limitations presented here.

For the purpose of determining the applicable Statute of Limitations, it is unimportant whether the claim be treated as one on contract or for breach of trust.

" When a legal and an equitable remedy exists as to the same subject-matter, the latter is under the control of the same statutory bar as the former. (*Rundle* v. *Allison*, 34 N. Y. 180.) Nor is the fact that the defendants received this money in a fiduciary capacity and may, therefore, hold it under such a trust as the law may imply for the purposes of justice. * * *

" * * * We hold that under Civil Practice Act, section 48, this action should at least have been begun within six years." (*Keys* v. *Leopold*, 241 N. Y. 189.)

There still survives the question as to the accrual date of Rockwood & Co.'s claim, if one there be. Under the quoted provisions of the mortgage, in the first instance, Rockwood & Co. assumed to the bondholders the payment of the normal income tax. However, it is provided that this obligation shall be discharged as to Rockwood & Co. by its deposits with S. W. Straus & Co., Inc. The agreement of S. W. Straus & Co., Inc., was that it would reimburse the bondholders for these tax payments " upon presentation of such * * * coupons." Thus, with each deposit by Rockwood & Co. with S. W. Straus & Co., Inc., the former was released by the bondholders *pro tanto* from obligations, and S. W. Straus & Co., Inc., was substituted as the party liable. Not until S. W. Straus & Co., Inc., was discharged from this assumed obligation, could the " balance, if any remaining," be " ascertained." Until the balance could be ascertained, Rockwood & Co. had no claim against S. W. Straus & Co., Inc., and the statute did not begin to run. The bondholders surrendered their bonds and coupons, were paid in full and the mortgage discharged on May 15, 1926. Necessarily they could thereafter present no coupons for payment. The transaction was then closed. The six-year statute ran against this claim on May 14, 1932.

The same result is reached by another approach. The bondholders received their last interest on May 15, 1926. The last income tax liability of the bondholders upon this interest accrued on March 15, 1927. On that date the ultimate and final liability of S. W. Straus & Co., Inc., to the bondholders for taxes on all interest paid from the inception of the bonds became fixed. On that date the balance of the deposits remaining in the hands of S. W. Straus & Co., Inc., was ascertainable. In any event, the claim of Rockwood & Co. against S. W. Straus & Co., Inc., was mature then. That S. W. Straus & Co., Inc., made no disclosure of the balance remaining undisbursed, and that Rockwood & Co. made an inquiry did not affect the running of the statute. The claim accrued not later than March 15, 1927, and was barred on March 14, 1933.

Section 56 of the Civil Practice Act is no aid to the plaintiff. That provides that in an action " upon a mutual, open and current account, where there have been reciprocal demands between the parties, the cause of action is deemed to have accrued from the time of the last item proved in the account on either side." True, *on the books* of S. W. Straus & Co., Inc., there were small debits entered in 1926, 1927 and 1928, and the final entry was made on December 31, 1928, when the credit balance was transferred to the profit and loss account. However, these entries were not made

in pursuance of any agreement between the parties. There was no mutual, open and current account between them. The claim does not proceed upon an account stated. The entries are competent evidence as an admission by S. W. Straus & Co., Inc., of the indebtedness, but do not bring the case within this section of the Civil Practice Act. It was so held in *Adams* v. *Olin* (140 N. Y. 150, at p. 161).

The final contention of the receiver is that the claimant is without legal capacity to sue because the claim, if any, is in the bondholders. The entire scheme of the agreement was that the interest payable under the bond and mortgage be not charged with the four per cent Federal normal income tax, and for that purpose Rockwood & Co. agreed to pay the same whenever payable, and to insure such payment to deposit with S. W. Straus & Co., Inc., a sum equivalent to the normal income tax on the total interest payable. It being recognized that not all of the bondholders would be subject to normal income tax, it was agreed that those paying taxes and claiming reimbursement should make such claim at the time of the presentment of their interest coupons, and that after such reimbursement had been made that S. W. Straus & Co., Inc., would refund the balance to Rockwood & Co. The refund was to be made only after the balance was ascertained. The balance was not ascertainable until the income tax liability of the bondholders was fixed. It is true that notwithstanding the lapse of nearly nine years since the mortgage was satisfied, that under certain circumstances the government may assess against certain of the bondholders income tax liability upon the interest paid on these bonds, and in such event a bondholder might still have a claim for reimbursement against the receiver.

Upon that theory it is asserted that the balance payable to Rockwood & Co. is not yet ascertainable. On that basis the statute has not run against its claim. At most the claim would be premature. In such circumstances the claimant would be entitled to protection against a distribution of the assets by the receiver. Adequate provision would then be made for the allowance of the claim contingently, the distributive share to be held to await a future determination of the rights of Rockwood & Co. and the bondholders. However, I have concluded that the claim presented upon this theory is too remote. The mortgage having been satisfied on May 15, 1926, Rockwood & Co. then, or at least not later than March 15, 1927 (the income tax due date), had a *prima facie* claim for the balance then unused. Any outstanding claim by bondholders would then have been a matter of avoidance. As already indicated, that claim having run for more than six years

before it was made upon the receiver, is barred under section 48 of the Civil Practice Act.

I, therefore, recommend that the motion of Rockwood & Co. for an order directing the receiver to pay over to Rockwood & Co. the amount of the claim, be denied, and that as a general claim the same be dismissed upon the merits upon the ground it is barred by the Statute of Limitations.